JOHN J. RAUH, Plaintiff-Appellant and Cross-Appellee, v. ROCKFORD PRODUCTS CORPORATION, Defendant-Appellee and Cross-Appellant.

First District (2nd Division)   No. 1—89—0650

Opinion filed June 29, 1990.

362

Jeremiah Marsh, Michael M. Conway, and Sharon H. Rice, all of Hopkins & Sutter, of Chicago, for appellant.

Charles R. Kaufman and John A. Relias, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

In March 1987, plaintiff, John J. Rauh, was discharged by defendant, Rockford Products Corporation (Rockford). Plaintiff exercised his

contractual right to arbitration, which resulted in the issuance of an opinion and order of the arbitrator affirming plaintiff's discharge and the denial of both parties' requests for fees and costs. Plaintiff filed a complaint in the circuit court, pursuant to the Uniform Arbitration Act, to vacate or modify the award of the arbitrator. (Ill. Rev. Stat. 1987, ch. 10, par. 101 *et seq.*) Rockford filed its counterclaim to modify the award to include fees and costs it had incurred. The trial court affirmed the decision of the arbitrator. Plaintiff appeals his discharge and denial of fees and costs, and Rockford cross-appeals from the portion of the order affirming the arbitrator's decision to deny its fees and costs.

It is undisputed that in 1985, plaintiff led a group of employees in the purchase of Rockford, thereby avoiding a sale by its parent corporation to unknown third parties who may have been hostile to the preservation of Rockford as a going business at its present location. In her decision, the arbitrator states, in part:

"When he became aware that Rexnard planned to sell Rockford Products, he organized other managers of Rockford Products to form an acquisition company to leverage an employee buyout. This was achieved in November 1985 and the Claimant was widely touted and praised as the man who saved Rockford Products for its employees and for the city of Rockford. The other managers agreed that the Claimant should be the Chairman of the Board of Directors, President, and Chief Executive Officer of the new company.

It is easy to understand that their gratitude to him would be manifested in this manner. He had led them in a venture which saved their jobs from being jeopardized by unknown new higher management and it was natural that he be selected to lead them in their new venture as owner-managers."

In the process, plaintiff personally purchased 12,500 shares of common stock of Rockford for $250,000. On November 15, 1985, plaintiff and Rockford entered into a written agreement whereby plaintiff was employed for a five-year period (November 15, 1985 to November 15, 1990) as president, chief executive officer, and chairman of the board of directors.

The next annual meeting of shareholders was held on January 21, 1987. Plaintiff was reelected to the board of directors. At the board of directors meeting on the same day, plaintiff was reelected as chairman of the board of directors, president, and chief executive officer.

Approximately one month later, a meeting of the board of directors was held which resulted in the discharge of the plaintiff as presi-

dent, chief executive officer, and chairman of the board of directors. Plaintiff did not attend and claims not to have had notice of the meeting. The minutes of the meeting of the board of directors of Rockford, held on February 26, 1987, reflect that notice was given to all directors and that the plaintiff was absent. A discussion followed regarding the advisability of terminating plaintiff's employment. The minutes of the meeting state, in part:

"The directors then asked to review the appropriate section of Mr. Rauh's employment agreement as to termination, the Secretary determining it to be Section 8.1, which states:

'Company may also terminate this Agreement on 10 days' notice for cause including, without limittion [sic], disloyalty to Company, dishonesty in the conduct by executive of his position hereunder, failure or refusal to perform any reasonable assignment properly given to him within the capacity in which he is employed hereunder, his violation of any agreement contained herein, or his performance of any act which is contrary to the customary standards of conduct observed by employees of comparable status.'

After further discussion, in which it was agreed that action should be taken promptly with reference to Mr. Rauh's employment agreement and status, on motion made and seconded, the following resolutions were unanimously adopted:

RESOLVED, that John J. Rauh's Employment Agreement with the Corporation dated November 15, 1985, and his employment as Chairman of the Board, President and Chief Executive Officer be terminated for cause on 10 days' notice pursuant to Section 8.1 of said Agreement effective as of the beginning of business on Monday, March 9, 1987, and that Mr. Rauh be given written notice of such termination as promptly as possible on the date of this meeting; and

FURTHER RESOLVED, that effective immediately Mr. Rauh be removed from his posts as Chairman of the Board, President and Chief Executive Officer and all other positions related to his employment with the Corporation, and his authority to sign checks, drafts and other instruments in the name and on behalf of the Corporation be withdrawn and all banks with which the Corporation has accounts be promptly notified; and

FURTHER RESOLVED, that the Board of Directors, in its judgment, finds such action to be in the best interests of the Corporation."

Thereafter plaintiff filed a timely demand for arbitration pursuant to the provisions of his employment agreement. This resulted in the arbitration proceeding and decision previously mentioned.

The arbitrator's opinion does not conclude that the discharge of the plaintiff was proper under section 8.1 of the employment agreement. However, the arbitrator did conclude that plaintiff's discharge was proper under section 8.0 of the agreement. Section 8.0 was not mentioned in the minutes of the February 26, 1987, board meeting, nor in the resolution adopted at that meeting. Section 8.0 provides:

"8.0 If Executive fails (for reasons other than disability, death, breach of this Agreement by Company, or other reason beyond his control) to perform any of his agreements herein provided and such failure continues for a period of 30 days after Company shall have notified him in writing of such failure, Company shall have the right to terminate this agreement by written notice to Executive."

Plaintiff's principal assignment of error is that the decision of the arbitrator must be revoked because it exceeded the scope of the arbitration.

I

■ ■ An arbitration award may be vacated where the arbitrator exceeded her powers. (Ill. Rev. Stat. 1987, ch. 10, par. 112(a)(3).) An arbitrator exceeds her power when she decides matters which were not submitted by the parties for resolution. (*Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 419, 386 N.E.2d 47.) Although this court may not substitute its interpretation of a contract for that of the arbitrator, it may inquire into the merits of the arbitrator's interpretation only to determine if the arbitrator's award drew its essence from the agreement so as to prevent a manifest disregard of the agreement between the parties. (74 Ill. 2d at 421.) "[I]f all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair interpretation of the contract, then the court would be bound to vacate or refuse to confirm the award." (Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act* (1957), 10 Vand L. Rev. 685, 706, cited with approval, *Garver v. Ferguson* (1979), 76 Ill. 2d 1, 9-10, 389 N.E.2d 1181.) "[G]ross errors of judgment in law or a gross mistake of fact will not serve to vitiate an award unless these mistakes or errors are apparent upon the face of the award." 76 Ill. 2d at 10-11.

On January 21, 1987, the shareholders expressed their confidence

in the plaintiff by reelecting him to serve as a director of Rockford. The directors' meeting that immediately followed the action of the shareholders resulted in his reelection as president, chief executive officer, and chairman of the board.

Thirty-five days later, on February 26, 1987, the very same directors adopted a resolution "that [plaintiff's] Employment Agreement with the Corporation dated November 15, 1985, and his employment as Chairman of the Board, President and Chief Executive Officer be terminated for cause *** pursuant to Section 8.1 of said Agreement." Apparently some "cause" unknown to them on January 21, 1987, became known to them so that "in the best interests of the Corporation," on February 26, 1987, they resolved "that effectively immediately [plaintiff] be removed from his posts as Chairman of the Board, President and Chief Executive Officer and all other positions related to his employment with the Corporation." To accomplish this purpose, they chose to rely upon section 8.1.

An examination of the record reveals that neither party submitted to the arbitrator any question regarding section 8.0 of the agreement. The only question raised was whether plaintiff was properly discharged for cause under section 8.1.

■ The arbitrator's decision does not support plaintiff's discharge under section 8.1, but upholds the discharge under section 8.0 even though it was not raised, briefed or argued by either side. We therefore conclude that the arbitrator exceeded her powers by deciding a matter that was not submitted by the parties for resolution.

Rockford contends that even if the arbitrator exceeded her powers, the error of deciding the termination of the plaintiff under section 8.0 rather than section 8.1 should be upheld. We disagree.

Even if section 8.0 had been submitted, her decision misconstrues that provision so seriously that it constitutes manifest disregard of the agreement. Fair and reasonable minds would not agree that the decision is a valid interpretation of section 8.0.

■ The arbitrator exceeded her power by concluding that Rockford could unilaterally discharge plaintiff without cause and without complying with its obligation to notify the plaintiff of his failure to perform and give him an opportunity to correct those failures within 30 days as required by section 8.0. The award is invalid for two independent reasons. First, neither party submitted any question regarding section 8.0, thus she lacked authority to decide it.

Second, even if she could interpret section 8.0, her decision is a gross disregard of the specific provisions of the agreement. The arbitrator admitted that the plain language of section 8.0 does not sup-

port her decision. Rather, she asserted that the parties must have intended to use different language and the words in section 8.0 "became tangled." Nothing in the record refers to the parties' intentions in drafting section 8.0. In fact, section 8.0 is not "tangled." The procedure is rational and explicit. It allowed Rockford to give notice to the plaintiff of his failure to perform for reasons other than matters beyond his control. If plaintiff failed to correct his performance within 30 days after receiving notice, Rockford could terminate him upon further notice. Conversely, if in the 30-day period plaintiff corrected his failures, he could not be discharged. It is undisputed that Rockford never gave plaintiff an opportunity to correct his failures, if any.

The arbitrator's mistakes of fact and errors in application of the law cannot be excused because they are apparent on the face of the award.

We therefore conclude that the decision and order of the arbitrator must be vacated and that the trial court erred in not doing so.

## II

Rockford counterclaimed, asserting that the trial court erred in refusing to award it attorney fees and costs pursuant to section 8.2 of the agreement. Rockford contends that it prevailed on this issue because the arbitrator did not order that the plaintiff be reinstated or that he be compensated as he sought. We disagree.

Section 8.2 of the agreement provides that the prevailing party "in any arbitration or other proceeding over whether or not there *** existed cause sufficient to entitle [Rockford] to terminate [plaintiff's] employment" shall recover costs and reasonable attorney fees. Section 8.2 does not provide for fees for the party that prevails on any issue in arbitration. Therefore, Rockford is not entitled to attorney fees since the arbitrator found that plaintiff was not discharged for cause, but rather was discharged for a matter beyond his control, namely, failure to provide leadership. See *Thornton v. Illinois Founders Insurance Co.* (1981), 84 Ill. 2d 365, 373, 418 N.E.2d 744.

Accordingly, the judgment of the circuit court of Cook County is reversed and this cause is remanded for further arbitration proceedings consistent with the views expressed herein.

Reversed and remanded.

DiVITO, P.J., and SCARIANO, J., concur.