JOHN J. HAYES, Plaintiff-Appellee, v. THOMAS F. ENNIS, Defendant-Appellant.

Fourth District   No. 4—95—0520

Argued December 13, 1995.—Opinion filed March 8, 1996.

J. Steven Beckett (argued) and Brett N. Olmstead, both of Beckett & Webber, P.C., of Urbana, for appellant.

James A. Martinkus (argued) and Jeffery B. Wampler, both of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Plaintiff John Hayes and defendant Thomas Ennis entered into a partnership agreement (Agreement) in connection with the purchase, development, sale, and lease of houses, duplexes, and apartments on the former Chanute Air Force Base in Rantoul. Their partnership was known as "Ennis-Hayes Properties" and was formed on July 19, 1994. Under this Agreement, Hayes (a real estate broker and developer) was to oversee and manage the marketing of the real estate sales and rentals, and Ennis (an excavation contractor) was to oversee and manage any repairs or remodeling to the real estate. Each partner was to contribute certain amounts of working capital within certain periods of time after the execution of the Agreement. In addition, each partner could give notice (referred to as a "capital call"), requiring each partner to contribute further capital in the event the balance in the partnership checking account, after deduction of all accounts payable, dipped below $25,000. The Agreement provided for the expulsion of a partner under certain specified conditions. The Agreement further provided for arbitration in the event of a dispute arising thereunder.

Hayes allegedly failed to make some of his capital contributions and capital calls. Ennis sought arbitration on several issues, including whether Hayes' failure to pay capital contributions and capital calls was material, thus invoking Ennis' right to expel Hayes from the partnership. Hayes also submitted issues for arbitration. The parties also disagreed as to computation of the profits to be distributed to the partners.

The arbitrator found Hayes had breached the Agreement, but that the breaches were not material. The arbitrator further gave Hayes 30 days to cure all breaches and, if not cured within that period of time, the arbitrator declared this would constitute a material breach. Hayes sought confirmation of the arbitrator's decision in the circuit court of Champaign County. The court confirmed the arbitrator's decision and Ennis now appeals to this court under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), arguing that the

arbitrator disregarded the Agreement and the award should be vacated. We disagree and affirm.

Section IV(b) of the Agreement provided that each partner's initial contribution of $160,000 to the partnership would be considered contributed by his assignment of his undivided one-half interest in the contract whereby the parties were the successful bidders on the purchase of the real estate (referred to as the "Chanute Contract"). Under section IV(c), this contribution was to be made upon execution of the Agreement. Section IV(d), entitled "Additional Capital Contributions," set forth further capital contributions to be made by each partner as follows: (1) the sum of $10,000 to be contributed on or before the execution of the Agreement (section IV(d)(A)); (2) the sum of $25,000 to be contributed within 30 days after execution by the partners of a "License Agreement" with the United States for the real estate (section IV(d)(B)); and (3) the further sum of $50,000 to be contributed within 60 days after execution of the "License Agreement" (section IV(d)(C)).

Section IV(d)(E) provided:

"Additional capital contributions will be required from each Partner if, at any time, the balance in the Partnership checking account, net of accounts payable then in hand, is less than $25,000. The amount to be contributed by each of the Partners will be the greater of the sum of $10,000 or the amount necessary to raise the cash balance in the checking account, net of the accounts payable in hand to $25,000. Either Partner may give notice to the other Partner of the need for such a capital contribution (herein a 'Capital Call')."

Each capital call was to be fulfilled by each of the partners within 20 days of service of notice of the capital call.

Section IV(d)(H) of the Agreement provided that if a partner failed to pay a capital call within the 20-day period, the other partner could make the contribution for him. The nonpaying partner could reimburse the paying partner within 60 days of the payment by paying the amount of the capital call, plus a fee of 25% of the amount of the capital call. If not repaid, the paying partner could, upon notice to the other partner, elect to treat the contribution as an additional capital contribution of his own.

Section VIII of the Agreement provided that the partners were entitled to profits equal to their respective percentage of partnership capital. The distributive share of profits was to be determined as of the last day of each month and distributed to the partners as soon thereafter as possible. Section XIV provided for the expulsion of a partner in the event of:

> "A judicial determination that the Partner in question has [f]ailed to fulfill any material obligation to the Partnership as specified in this agreement, and such failure has continued for a period of 30 days after written notice thereof."

Section XVI provided that disputes arising under the Agreement shall be submitted to arbitration.

Among the issues submitted by Ennis to the arbitrator were whether (1) the capital contributions to be made pursuant to the provisions of sections IV(d)(B) and (d)(C) of the Agreement ($25,000 and $50,000 requirements) are contributions required to be made in addition to sums contributed pursuant to the provisions of section IV(d)(E) (capital calls); (2) Hayes breached the provisions of the Agreement by reason of his failure to make the capital contributions required by sections IV(d)(B) and (d)(C); (3) the failure of Hayes to make the capital contributions notwithstanding receipt of notice of default entitles Ennis to a finding that Hayes should be expelled from the partnership pursuant to the provisions of section XIV of the Agreement; and (4) Hayes breached the Agreement by failing to fulfill capital calls pursuant to the provisions of section IV(d)(E).

Hayes also submitted certain issues to the arbitrator, including the question of whether Ennis breached the Agreement by performing unnecessary work to duplex units in an attempt to cause excessive capital calls with the intent to dilute Hayes' partnership interest. Prior to receiving evidence at the hearing, the arbitrator ruled that fulfillment of all capital calls already made was stayed pending resolution of the arbitration proceedings.

At the arbitration hearing, both parties testified. In addition, two accountants testified to the manner of calculation of the net profits. Ennis testified that he had contributed approximately $200,000 more than Hayes in capital contributions, not including capital calls. Hayes generally agreed with this statement. Ennis paid all capital contributions not paid by Hayes, and he gave Hayes notice of his default. According to Ennis, Hayes failed to pay the $25,000 capital contribution under section IV(d)(B) and the $50,000 contribution required under section IV(d)(C). Ennis also made several capital calls when he thought it was necessary. Two of them were admittedly made when the checkbook balance was not below the required $25,000. Ennis agreed there were no outstanding capital calls, not stayed by the arbitrator, which Hayes had not paid, along with the required penalties. Ennis testified that he paid over $58,000 of Hayes' share of the capital calls when Hayes did not pay them on time. Ennis admitted he had completed approximately $2,000 of work without Hayes' consent, in violation of the Agreement. Hayes testified his understand-

ing of the Agreement was that he and Ennis would make the contributions required under sections IV(d)(A), (d)(B), and (d)(C), and any capital calls under section IV(d)(E) would become part of the $85,000, *i.e.*, the monetary requirements of sections IV(d)(A), (d)(B), and (d)(C) were not to be in addition to the capital call requirements. Hayes testified he went into the venture believing that it would fund itself.

On March 24, 1995, the arbitrator issued a written ruling disposing of the issues raised by the parties. As to the issues relevant to this appeal which were raised by Ennis, the arbitrator ruled that the capital contributions required by sections IV(d)(B) and (d)(C) of the Agreement were entirely separate from the capital call provisions of the Agreement. The Agreement specifically provides for the working capital contributions to be made, in addition to any capital calls. The arbitrator noted the Agreement had recognized the fact that certain minimal contributions would be necessary to move the project forward. When the funds generated through the specified contributions were expended to a point where the checking account balance was less than $25,000, less accounts payable in hand, additional amounts could be required to be contributed through the capital call provisions of the Agreement. The arbitrator found that Hayes had breached the Agreement by his failure to make capital contributions required by sections IV(d)(B) and (d)(C). However, this breach was not deemed material under the expulsion provisions of section XIV of the Agreement, since the partnership had continued to move forward, albeit with difficulty, in the acquisition of the property and the readying of units for sale or lease. The arbitrator directed that contributions due from Hayes, under sections IV(d)(B) and (d)(C) of $25,000 and $50,000 respectively, be made to the partnership within 30 days of the arbitrator's ruling. If payment was not made, then "such wilful breach shall be a material breach under Section XIV, and Mr. Hayes shall be expelled from the partnership." The amounts required from Hayes were to be paid from his share of the accumulated partnership profits, to the extent Hayes' share was adequate to make the payments.

The arbitrator also ruled that Hayes did not breach the capital call provisions of the Agreement because all call amounts due prior to the arbitrator's stay were paid within 60 days and penalties paid, pursuant to section IV(d)(H) of the Agreement. The arbitrator ruled that Hayes must pay the calls which were stayed within 30 days of the ruling. If not paid, with interest and penalties, the breach would be material and Hayes would be expelled from the partnership.

As to issues submitted by Hayes, the arbitrator ruled any unnec-

essary work completed by Ennis was minor, noting Hayes signed checks for the work and did not give notice that Ennis was in violation of the Agreement. As to miscalculated capital calls made by Ennis, the arbitrator specifically found they were made in good faith and determined Hayes was not damaged by any of those calls. By stipulation of the parties, the arbitrator issued an order on April 13, 1995, staying all provisions of his ruling regarding expulsion or dilution of Hayes' partnership interest and all payments to be made by Hayes under the ruling until 30 days after distribution of net partnership profits.

On April 7, 1995, Hayes filed a complaint in the circuit court, seeking confirmation of the arbitration award. On May 15, 1995, Ennis filed an answer and objections and a counterclaim. In relevant part, the objections to the arbitration award alleged that the arbitrator had exceeded his powers under section 12(a)(3) of the Uniform Arbitration Act (Act) (710 ILCS 5/12(a)(3) (West 1994)) by finding that Hayes' failure to make capital contributions was not a material breach of the Agreement, but that his continued failure to make such contributions 30 days after the arbitrator's ruling would be a material breach. Ennis alleged that this ruling had no basis in the Agreement and instead displayed the arbitrator's own sense of substantial justice. Ennis asked that the arbitrator's award be vacated to the extent that it ruled that Hayes' failure to make capital contributions required by sections IV(d)(B) and (d)(C) of the Agreement was not a material breach warranting expulsion from the partnership. Ennis also counterclaimed for dissolution of the partnership.

After hearing arguments of counsel and receiving written memoranda of law, the circuit court confirmed the arbitrator's award. In a letter ruling dated June 7, 1995, the court found that Ennis had waived his right to object to the arbitrator's decision by failing to ask the arbitrator under section 9 of the Act (710 ILCS 5/9 (West 1994)) to modify or correct the award.

Ennis filed a motion for reconsideration of the waiver ruling, and the court issued a second ruling in which it confirmed the award regardless of any waiver, finding that the arbitrator did not exceed or abuse his authority.

On June 22, 1995, Hayes filed a petition asking the court to enforce the confirmed judgment of the arbitrator's award by ordering Ennis to execute checks on the partnership account in accordance with the arbitrator's ruling. On Ennis' motion, the court entered an order on June 26, 1995, finding that there was no just reason for delay in enforcement or appeal of the court's orders of June 7, 1995, and June 14, 1995. Thereafter, Ennis filed his notice of appeal.

■ Arbitration awards should be construed, wherever possible, to uphold their validity. There is a presumption that the arbitrator did not exceed his or her authority. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 386, 574 N.E.2d 636, 641 (1991). The general view is that judicial review of an arbitrator's award is more limited than appellate review of a trial court's decision. *Garver v. Ferguson*, 76 Ill. 2d 1, 8, 389 N.E.2d 1181, 1183 (1979). An award will not be set aside due to gross errors in judgment in law or gross mistakes of fact by the arbitrator unless the errors or mistakes are apparent on the face of the award. *Garver*, 76 Ill. 2d at 10-11, 389 N.E.2d at 1184.

Ennis argues the arbitrator's ruling that Hayes' failure to make required capital contributions was not a material breach of the Agreement, but that his failure to make those payments within an additional 30 days would constitute a material breach lacks any principled basis in the Agreement and therefore exceeded the power of the arbitrator. He relies upon section 12(a)(3) of the Act, which requires the court to vacate an award where the arbitrator has exceeded his or her powers.

■ Section 12(a) of the Act provides that an arbitrator's award may be vacated only in very limited circumstances:

"Vacating an award. (a) Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award." 710 ILCS 5/12(a) (West 1994).

■ In determining the proper standard to be applied in construing section 12(a)(3) of the Act, the Supreme Court of Illinois has stated:

" '[T]he question for the court is whether the construction of the

contract made by the arbitrator is a reasonably possible one that can seriously be made in the context in which the contract was made. Stated affirmatively, if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair interpretation of the contract, then the court would be bound to vacate or refuse to confirm the award.' Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act*, 10 Vand. L. Rev. 685, 706 (1957)." *Rauh*, 143 Ill. 2d at 391-92, 574 N.E.2d at 643.

This case is controlled by our recent decision in *Tim Huey Corp. v. Global Boiler & Mechanical, Inc.*, 272 Ill. App. 3d 100, 649 N.E.2d 1358 (1995). In that case, a contractor sought confirmation of an arbitration award and the owner sought to have it vacated. The circuit court confirmed the award and the owner appealed. The parties had contracted for installation of equipment for a cogeneration facility for the production of electricity by burning sawdust and other wood waste and to produce steam to operate kilns used to dry green lumber. The contract stated a price and provided that the contractor could not recover for extra work completed unless the owner signed a written change order. It also provided for arbitration of any disputes. The contractor began work, but never finished. The contractor's expert witness at the arbitration hearing testified that damages to the owner were just over $400,000. The owner's expert testified that damages were in excess of $1 million. The arbitrators awarded the owner only $178,928. In addition, the arbitrators awarded the contractor over $92,000 on its claim of compensation for extra work completed, despite the fact that no change orders were ever signed. On appeal, the owner argued that the damages awarded were inconsistent with the arbitrators' implicit determination that the contractor had breached the contract.

This court affirmed the circuit court's confirmation of the award. It noted that while it suspected the damages award was insufficient and, had a jury awarded such damages, the verdict might well be reversed, there was no principled way to overturn the arbitrators' decision where the parties had selected an alternate forum. There was no indication that the arbitrators had acted in bad faith, were guilty of fraud, or clearly chose not to follow the law. Perhaps the arbitrators found the owner partially responsible for the breach and that the owner had waived the provision requiring written change orders. *Huey*, 272 Ill. App. 3d at 109-10, 649 N.E.2d at 1365.

■ As we stated in *Huey*, we see no principled way to inject ourselves into this case. As to whether Hayes' breach was material, we note that nowhere in the Agreement is the term "material obliga-

tion" defined. Even if we disagreed with the arbitrator's assessment that Hayes' breach was not material, this would not be grounds to vacate the award. The parties agreed to submit their disputes to arbitration, and they bargained for the arbitrator's interpretation of the Agreement. The fact that Ennis is unhappy with this interpretation is irrelevant.

Ennis believes that the 30-day provision contained in the arbitrator's decision has no basis in the Agreement and was merely the arbitrator's way of giving Hayes another opportunity to cure his breach before being expelled from the partnership. However, Hayes' counsel pointed out at oral argument that section XIV(a) of the Agreement could be read in such a manner as to sustain the arbitrator's interpretation. Indeed, a reading of that provision reveals an ambiguity. The phrase "and such failure has continued for a period of 30 days after written notice thereof" modifies the phrase "[a] judicial determination that the Partner in question has [f]ailed to fulfill any material obligation to the Partnership as specified in this agreement." Thus, section XIV(a) may be read as meaning that if Hayes' failure continued for more than 30 days following notice of a judicial determination of material breach, he could be expelled from the partnership. The fact that the arbitrator may have misinterpreted this provision when he found the breach was not material, yet imposed the 30-day deadline, does not provide any basis for relief. As we have stated, the parties bargained for the arbitrator's interpretation of the Agreement, and we will not impose our own view upon them.

A quotation contained in *Garver* from an 1854 decision of the Supreme Court of the United States is as relevant today as it was then.

> " 'Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation.' " *Garver*, 76 Ill. 2d at 9, 389 N.E.2d at 1184, quoting *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349, 15 L. Ed. 96, 99 (1854).

130

For the reasons stated, we affirm the circuit court's order confirming the arbitrator's award.

Affirmed.

COOK, P.J., and STEIGMANN, J., concur.