**WAVERLY MINERAL PRODUCTS CO.,**
**Plaintiff–Appellee,**

v.

**UNITED STEELWORKERS OF AMERI-CA, AFL–CIO, LOCAL NO. 8290,**
**Defendant–Appellant.**

No. 78–3223.

United States Court of Appeals,
Fifth Circuit.

Dec. 29, 1980.

Cooper, Mitch & Crawford, Robert H. Stropp, Jr., Birmingham, Ala., Karsman &

Brooks, Stanley Karsman, Savannah, Ga., Bernard Kleiman, Chicago, Ill., Carl B. Frankel, Pittsburgh, Pa., for defendant–appellant.

Altman & McGraw, Harry J. Altman, II, Thomasville, Ga., for plaintiff–appellee.

Before VANCE, FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

This is an appeal from an order of the district court vacating the award of an arbitrator under a collective bargaining agreement. The issue is whether the arbitrator exceeded the scope of his authority under the arbitration provisions of the agreement in making his award. Because the district court erred in vacating the arbitrator's award, we reverse.

The facts are not in dispute. Plaintiff Waverly Mineral Products Co. (employer) and defendant United Steelworkers of America, AFL–CIO, Local No. 8290 (Union) were parties to a collective bargaining agreement covering the terms and conditions of employment at employer's Thomasville, Georgia, plant.

Under the terms of the collective bargaining agreement the employer reserved unto itself "the right to ... discharge for good cause not in violation of this Agreement." Moreover, Article III(B) of the agreement gave employer "the right to establish, maintain and enforce ... reasonable rules and regulations, it being understood and agreed that such rules and regulations shall not be in conflict with the express provisions of this Agreement." Addendum B of the agreement created sanctions for violations of certain enumerated rules, among them a rule prohibiting "[a]bsence from work without an excuse acceptable to the Company." For the third violation of any rules within a twelve–month period the agreement provided that "the employee shall be discharged."

In addition to those provisions respecting management rights, the agreement also contained a "No Discrimination" clause:

*Article XVI*

*No Discrimination*

A. No employee shall be unfairly discriminated against because of membership or non–membership in the Union on the part of the Company or the Union.

B. It is mutually agreed by the Company and the Union that there shall be no discrimination because of race, color, religion, sex, age or national origin.

The agreement also provided a standard grievance procedure, which the parties agreed "shall be applied and relied upon by all parties as the sole and exclusive means of seeking adjustment of and settling grievances ...." The scope of the grievance machinery was broad, a "grievance" being defined as a "dispute between the Company and the Union, or an employee, over the application, interpretation or alleged violation of a specific provision of this Agreement." The first step of the grievance procedure is the submission of a grievance, signed and in writing, within seven days of the action complained of. The grievance is then taken up by the shop steward, and/or the complaining employee, and the department foreman. If the complaint isn't settled at this stage, it is referred to a larger group, consisting of a Union official, the steward, the department foreman, and the plant manager or his designee. Finally, "[a]ny grievance which concerns discharge ... and which remains unsettled after having been fully processed through the grievance procedure may be submitted to arbitration upon the written request of either the Company or Union ...."

Employee Gregory West was discharged for being absent from work three times within a twelve–month period without an excuse acceptable to employer. Within the time provided in the agreement, the Union filed the following grievance on West's behalf:

The Company violated the agreement when it discriminated against union, race and color by discharging Gregory West, a black man, for the third violation in a 12 month period 10–31–77, and took no discharge action against Harrell, a white man, for number of violations in the 12 month period.

The matter proceeded through the stages of the grievance procedure without resolution. Pursuant to the terms of the agreement, the issue was submitted to arbitration.

The arbitrator concluded that West was clearly "subject to discharge absent a showing by the Union that the Company acted in a disparate or discriminatory manner in the application of these rules." The Union had argued that the action against West "was without justification and not for 'just cause,'" while employer contended it had acted properly under the agreement's management rights provisions. In this report the arbitrator found:

Testimony for the Union showed clearly that the rules were not applied uniformly among employees for violations of the rules. The testimony did not necessarily show that blacks were discriminated against or that Union employees were discriminated against but it did show that employees as a whole were apparently treated differently by the Company in the meting out of discipline for the same rule infractions.

Because the rules were "applied ... in an unequal or disparate manner as between various employees," *id.*, the arbitrator ordered West's reinstatement and back pay.

The district court set aside the award. All management rights, except those "specifically limited by this Agreement," were not, under the agreement, subject to arbitration. Since according to the district court the arbitrator did not determine that any of the enumerated exceptions were applicable, the matter was held not amenable to arbitration, and the arbitrator's award was vacated.

In vacating the award, however, the district court ignored the strong presumption favoring arbitrability, and attached an overly narrow interpretation to the contractual limitations on reserved management rights. In considering these questions, we find guidance in the *Steelworkers* trilogy, which defines the role of arbitration in the resolution of disputes in the labor–management context. *See United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Those decisions enunciate a policy that a "particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1353. "Doubts should be resolved in favor of coverage." *Id.*

The court's role in reviewing awards is at the same time tightly circumscribed:

[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel & Car Co.,* 363 U.S. at 599, 80 S.Ct. at 1362. The scope of judicial inquiry "must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made." *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353. "If the subject matter of the dispute is arguably arbitrable (resolving all doubts in favor of coverage), then it is for the arbitrator to decide whether or not the dispute may be arbitrated." *Alabama Power Co. v. Local Union No. 391,* 612 F.2d 960, 963 (5th Cir. 1980).

The parties here do not dispute the fact that the issue submitted was arbitrable under the agreement. The employer argues that once the arbitrator found there was no discrimination motivated by race or union membership in this particular instance, and that West was subject to discharge, the arbitrator's task was complete. Here, as in *Johnston–Tombigbee Furniture Manufacturing Co. v. Local Union No. 2462, United Brotherhood of Carpenters and Joiners of America, AFL–CIO*, 596 F.2d 126 (5th Cir. 1979), the employer has read the management rights exclusion from arbitration too broadly. In that case, a management's rights clause contained a lengthy list of management prerogatives, including "the right to discipline, suspend, and discharge employees for just cause," and any and all other rights unless clearly limited by the contract's explicit language. The employer argued that all discharges were specifically excluded from arbitration by the language of the exclusionary clause that incorporated the management's rights clause by reference. The court held that the employer read the language too broadly:

> [N]ot all discharges are excluded from arbitration but only those discharges supported by just cause. Until an arbitrator determines whether the discharge is for just cause, the exclusionary clause does not apply.

596 F.2d at 128.

■ In agreeing with the employer that the contract permitted arbitration of only those discharge grievances supported by proof of racial or union discrimination, the district court likewise construed the arbitration provisions of the contract too narrowly. The grievance provisions in the contract did not state that any discharge not motivated by a prohibited reason was, for that reason alone, for good cause and therefore not arbitrable. Instead, the contract expressly provided that "*[a]ny* grievance which concerns discharge . . . may be submitted to arbitration." (Emphasis added.) The district court in effect construed management's right to discharge for good cause as precluding any challenge to a discharge that is not supported by proof of discrimi-

nation expressly prohibited under the contract. But this reasons that, by the inclusion of boilerplate nondiscrimination clauses, the Union implicitly agreed to forego arbitration of disputes arising out of circumstances not conforming to those that were expressly anticipated by the parties. Not only does this argument attribute a comprehensive foresight to the parties to the agreement, one that is simply imaginary so far as the negotiators for the Union are concerned, it completely preempts the role of the arbitrator in dealing with discharges arising out of circumstances not anticipated, nor capable of anticipation, by the parties. What the parties did anticipate was that "disputes" would arise concerning the "interpretation" of the contract, in this case whether a discharge that was supported by the rules was nonetheless supported by "good cause," as that term might be construed in light of all the circumstances. Since such a dispute occurred in this case, it was for the arbitrator to decide, and the district court erred in concluding that the dispute was not arbitrable.

■ The company makes a pleading point, however, in addition to its argument concerning the scope of arbitrability under the contract. The employer also argues that even if, as we conclude, this dispute was subject to arbitration as a matter of construction of the collective bargaining agreement, still the arbitrator exceeded the scope of the issue as it was submitted to him. The contract itself provides that the arbitrator "shall be limited to the particular dispute in question . . . ." The employer argues that the "particular dispute in question" submitted to arbitration in this case was the issue of racial or union–based discrimination, without respect to discrimination in the meting out of discipline on any other basis. The arbitrator's report does not support this contention, however. That report recites that the company argued, and the Union disputed, that there was good cause for West's discharge. We think it was for the arbitrator to decide just what the issue was that was submitted to it and argued by the parties. "Once it is deter-

mined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964).

REVERSED and REMANDED for enforcement of the arbitrator's award.