SYDNEY HIMMELSTEIN *et al.*, Plaintiffs-Appellants, *v.* VALENTI
DEVELOPMENT CORPORATION *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-2950

Opinion filed January 11, 1982.

Kathleen J. Hittle, of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Robert Marc Chemers and Joseph B. Lederleitner, of counsel), for appellants.

Thomas P. Valenti, of Karr & Valenti, Ltd., of Chicago, for appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

Sydney and Ingeborg Himmelstein (plaintiffs) sued Valenti Development Corporation, Valenti Builders, Incorporated, and Joseph Valenti (defendants), seeking rescission of a real estate contract and other relief. In the amended complaint count I sought rescission of the contract. Count II sought to enjoin defendants from declaring a forfeiture of money paid by plaintiffs and from disposing of the subject real estate. Count II also prayed for reformation of the contract to reflect a more than 40% reduction in the purchase price. Count III alleged pre-contract tortious misrepresentation. Count IV sought to "pierce the corporate veil" and hold all three defendants personally liable upon the contract signed only by Valenti Development Corporation. The trial court dismissed counts I, II, and IV under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48). Plaintiffs' motion for leave to file a second amended complaint was denied. Plaintiffs appeal.

On March 12, 1979, plaintiffs contracted with defendant, Valenti Development Corporation, for the construction and purchase of a residence and adjoining lot in Lincolnshire, Illinois, for $185,900. Article 5 of the contract provides in part:

"* * *. Seller further agrees that (A) The construction shall be in a good and workmanlike manner and of good and substantial material, and shall comply with all applicable state and local zoning and building codes; (B) Residence shall be delivered free of substantial defects in material or workmanship to the extent set forth in the new warranty and service policy formerly adopted by the Home Builders Association of Chicagoland * * * Seller will promptly repair, replace or otherwise attend to substantial defects in material or workmanship in or about the real estate which has been brought to its attention by purchaser during construction and within one year from the date of delivery of possession to Purchaser * * *."

Article 8 of the contract provides:

"Any dispute between Purchaser and Seller with respect to labor and/or material, or whether the residence has been constructed as

herein required, shall be determined by the architect preparing plans and specifications and such determination shall be conclusive and binding upon Purchaser and Seller."

Plaintiffs alleged that about September 10, 1979, before conveyance of the finished property, plaintiffs observed a crack in a basement wall. Water was leaking from the crack onto the basement floor. Plaintiffs informed defendants of the situation. At the request of defendant, Valenti Builders, the architect who prepared the plans for the building inspected the premises in December. Plaintiffs accompanied the architect during his inspection.

By letter dated December 19, 1979, the architect stated he could not detect the crack complained of but "it was apparent that repair work had been performed" and that two of the basement walls "had been coated with a cement wash." In the letter the architect also related the methods of repair which he was "advised" had been performed on the walls. The architect wrote:

"* * * I do not believe that there is [sic] any structural problems. It would appear that Valenti Builders had used three different methods of waterproofing, when any one of them might have proved sufficient.

It appears that plans and specifications hace [sic] been followed in a workmanlike manner. When a deficiency did develop, Valenti has more than adequately attempted to rectify it."

Nevertheless, the architect cautioned, "the real test, of course, is can the walls survive a wet season without leaks. This can be expected to occur next spring." He finally suggested that the one-year warranty be extended an extra year "so that if for any reason a leak did not occur the first year, but for some reason did become evident the second, the Owner could be assured it would be repaired."

This letter from the architect was presented to the trial court as a part of the motion by defendants to dismiss plaintiffs' amended complaint. Defendants interpreted the architect's report as a determination that no "substantial defect" then existed in the premises and scheduled a final closing date. Plaintiffs did not accept tender of the deed nor did they tender the balance of the purchase price. Thereafter, defendant, Valenti Development Corporation, invoked a forfeiture clause in the contract and declared a forfeiture of all money received from plaintiffs to date, the sum of $46,754.80.

Plaintiff, Sydney Himmelstein, filed an affidavit stating he inspected the subject premises on May 31, 1980, presumably after the "wet season" described by the architect. The affidavit avers plaintiff observed some cracks in the basement walls, discoloration "by leaks and water seepage," and repair patches which were not visible at the earlier inspection in

December of 1979. Plaintiffs also submitted color photographs taken during the May inspection which evidence the veracity of the affidavit.

■■ There is no dispute that a contract can legitimately provide for binding arbitration as to any "controversy thereafter arising between the parties" and such a provision "is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract * * *." Ill. Rev. Stat. 1979, ch. 10, par. 101. See also *Iser Electric Co. v. Fossier Builders, Ltd.* (1980), 84 Ill. App. 3d 161, 405 N.E.2d 439, and *Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 392 N.E.2d 198.

In oral argument to this court, the parties agreed that section 8 of their contract above quoted effectively provides for binding arbitration and they are bound thereby. However, the parties disagree as to the interpretation and effect of the architect's report. Defendants argue the report establishes the residence was without "substantial defect" at the time the property would have been conveyed to plaintiffs. Plaintiffs contend any conclusions reached by the architect support their position and show the structure was not constructed in a good and workmanlike manner and free from substantial defects as required by the contract.

■■ In our opinion, the language of section 8 of the contract establishes binding arbitration of all disputes regarding the construction or condition of the premises. This section delegates to the architect the exclusive responsibility to resolve any dispute regarding "labor and/or material, or whether the residence has been constructed as herein required." The architect stated, "It appears that plans and specifications have been followed in a workmanlike manner." However, the essence of the dispute here is not an issue of labor or material. Paragraph 8 also requires the architect to determine if the home was "constructed as herein required." This phrase necessarily refers to section 5 of the contract which requires defendants to deliver the home "free of substantial defects in material or workmanship * * *." Thus the contract does provide for arbitration by the architect to resolve the factual matters involved in the present dispute between the parties. In our opinion, however, the architect's report does not provide a sufficient answer to this problem.

First, the report itself specifies the architect became aware of the alleged defect and extent of repairs only through the representations by the parties. The architect indicated that he could not detect the defect complained of, and he personally did not observe any repairs being made. Clearly any repairs were performed before the architect inspected the premises and he was therefore not able to determine the extent of the problem. In this regard, the repairs made by defendants hampered an effective and independent inspection upon which an accurate evaluation should have been based.

Second, the report does not make an unequivocal determination as to

whether a defect exists. On one hand the architect states he does not believe there are "any structural problems" and "it appears that plans and specifications were followed in a workmanlike manner." On the other hand, the architect does indicate that a "deficiency did develop" and he could not be sure that the walls could "survive a wet season." This equivocation on the part of the architect has resulted in what we believe to be a good faith dispute between the parties as to the interpretation of the report. We hold the report is not of sufficient clarity effectively to resolve the rights of the parties.

██ It follows that we are required to reverse the order appealed from insofar as it dismisses counts I and II of the amended complaint and to remand the cause for obtaining a proper and definitive report from the architect which will answer the questions above posed.

We do not believe the authorities cited by the parties require a different result. Plaintiffs rely on *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154. In *Petersen,* the supreme court held the buyer of a residence has the right to rescind the contract before the property is conveyed if the seller violates the implied warranty of habitability. *Petersen* is inapplicable at this phase of the case at bar because *Petersen* does not involve an arbitration clause.

In *Millan v. Seibt* (1977), 49 Ill. App. 3d 506, 364 N.E.2d 521, we held that a partnership agreement specifying that an accountant's final accounting upon dissolution of the partnership would be binding, precluded litigation. However, there is an obvious difference between the figures of an accountant which are inherently definite and conclusive and the architect's report in the instant case, which is replete with uncertainty.

We are not presently concerned with count III which was not dismissed by the trial court. This ruling was correct. It should simply be noticed that written agreements to arbitrate are not enforceable "upon such grounds as exist for the revocation of any contract * * *." (Ill. Rev. Stat. 1979, ch. 10, par. 101.) Count III alleges precontract, tortious misrepresentation, and this issue should be judicially determined.

Count IV of plaintiffs' complaint, seeking to pierce the corporate veil, was dismissed for failing to state a cause of action. Count IV alleges that Joseph Valenti is the principal stockholder and president of the defendant corporations, that there is a unity of interest between the corporate defendants and Joseph Valenti individually, and that Joseph Valenti was aware of alleged misrepresentations made on behalf of the corporate defendants. We agree with the trial court that the current request to pierce the corporate veil is premature.

There are no allegations in the amended complaint that plaintiffs would not be able to satisfy any judgment they might recover from Valenti Development Corporation, the only defendant to have signed the

contract. There is no allegation that this corporation has been dissolved or is insolvent. (Compare *Central States, Southeast & Southwest Areas Pension Fund v. Gaylur Products, Inc.* (1978), 66 Ill. App. 3d 709, 712, 384 N.E.2d 123.) Thus, we have before us at present no allegations which would indicate that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Gallagher v. Reconco Builders, Inc.* (1980), 91 Ill. App. 3d 999, 1004, 415 N.E.2d 560.

■■ Therefore, the dismissal of count IV is affirmed but the order appealed from should be modified so that the dismissal is without prejudice to plaintiffs.

■■ As regards the proposed second amended complaint tendered by plaintiffs to the trial court, in view of the fact that the litigation will continue upon plaintiffs' amended complaint after and in accordance with the factual determination by the architect, we see neither need nor reason for the proposed second amended complaint. We cannot say that the proposed second amended complaint is so different "from the amended complaint so that [plaintiffs'] chances of ultimate success were increased." (*City of Des Plaines v. Pollution Control Board* (1978), 60 Ill. App. 3d 995, 1002, 377 N.E.2d 114.) This ruling by the able trial judge was well within the bounds of reasonable discretion particularly in view of the fact that the proposed second amended complaint was not tendered until after final judgment. (*In re Estate of Ariola* (1979), 69 Ill. App. 3d 158, 171-72, 386 N.E.2d 862.) Denial of leave to file the second amended complaint is accordingly affirmed.

Consequently, the orders herein appealed from dated July 16, 1980, and October 17, 1980, are hereby reversed as regards dismissal of counts I and II of plaintiffs' amended complaint. The cause is accordingly remanded to the trial court with directions to require the architect to prepare and lodge with the parties, within a day certain to be fixed by the trial court, a supplemental factual report which will consider and decide the matters above pointed out in accordance with section 8 of the contract. The trial court is directed then to proceed with hearing and decision on all remaining issues raised in counts I, II and III of the amended complaint.

Insofar as the orders appealed from dismiss count IV, said orders are affirmed and the cause is remanded with directions that this dismissal of count IV be modified by the trial court so as to be without prejudice.

Affirmed in part; reversed in part; and remanded with directions.

CAMPBELL, P. J., and O'CONNOR, J., concur.