AMGEN, INC., Plaintiff-Appellee, v. ORTHO PHARMACEUTICAL CORPORATION *et al.*, Defendants-Appellants (Endispute, Inc., *et al.*, Defendants).

First District (2nd Division)   No. 1—98—3287

Opinion filed March 2, 1999.

Latham & Watkins (James G. Hunter, Jr., of counsel), and William J. Harte, Ltd. (William J. Harte, of counsel), both of Chicago, for appellants.

Reuben L. Hedlund and Marion B. Adler, both of Hedlund, Hanley & John, of Chicago, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

This is an appeal from an order of the circuit court granting summary judgment in favor of plaintiff, Amgen, Inc. (Amgen), and ordering arbitration of Amgen's claim for termination of the parties' product licensing agreement (PLA) before Endispute, Inc. (Endispute). On appeal, defendants, Ortho Pharmaceutical Corp. and Ortho Biotech, Inc. (collectively, Ortho), contend that the circuit court erred: (1) by deferring to the Endispute arbitrator the jurisdictional question of who should arbitrate Amgen's termination claim; and (2) by requiring the parties to arbitrate the termination claim before the Endispute arbitrator where: (a) the arbitration clause found in the PLA expressly required that "any dispute" concerning the PLA must be arbitrated before a "panel of three (3) arbitrators" under the auspices of the American Arbitration Association (AAA); (b) there is no agreement between the parties to replace the AAA with Endispute for arbitrating all disputes concerning the PLA or to arbitrate the termination claim before Endispute; and (c) facts found by the Endispute arbitrator establish that Amgen's termination claim is outside the scope of Endispute's limited jurisdiction.

BACKGROUND

The relevant facts are as follows: plaintiff Amgen is a corporation that is organized under the laws of the State of Delaware and based in the State of California. It is engaged in manufacturing and marketing biopharmaceutical products licensed by the United States Food and Drug Administration and similar regulatory bodies for sale and use in the United States and throughout the world. Among other products, Amgen developed, manufactures, and sells in the United States a genetically engineered form of human erythropoietin, called Epoetin alfa (EPO), under the brand name "Epogen®." EPO is used in the treatment of anemic patients whose bodies do not produce sufficient quantities of red blood cells.

Defendant Ortho Pharmaceutical Corp. is a corporation organized under the laws of the State of Delaware and based in the State of New Jersey. And, it is a wholly owned subsidiary of Johnson & Johnson. Defendant Ortho Biotech, Inc., was formally an incorporated division of Ortho Pharmaceutical Corp. and is now its wholly owned subsidiary.[1] Collectively, Ortho is engaged in the sale of pharmaceutical products in the United States, including, under license by Amgen, the sale of EPO manufactured by Amgen and sold by Ortho under the brand name "Procrit®."

On September 30, 1985, Amgen and Ortho entered into a product license agreement wherein Amgen licensed Ortho to market and sell in the United States EPO manufactured and supplied by Amgen for all therapeutic uses except dialysis, which Amgen reserved for itself. In the PLA, Ortho agreed to use "reasonable efforts to market and sell Licensed Products in the Licensed Territory." Further, paragraph 10.07 of the PLA contains an arbitration clause that provides:

> "In the event any dispute should arise between the parties hereto as to the validity, construction, enforceability or performance of this AGREEMENT or any of its provisions, such dispute shall be settled by arbitration. Said arbitration shall be conducted at Chicago, Illinois, in accordance with the rules then obtaining of the [AAA] with a panel of three (3) arbitrators."

The PLA goes on to state, "This AGREEMENT shall be construed in accordance with the internal laws, and not the law of conflicts, of the State of California applicable to agreements made and to be performed in that state."

On January 23, 1989, Ortho demanded arbitration to compel Amgen to perform obligations required by the terms of the PLA. In this

---

[1]Defendants Endispute, Judicial Arbitration and Mediation Services, Incorporated, and the AAA are nominal parties to the lawsuit.

first arbitration, Ortho alleged that Amgen pursued a course of conduct in violation of the PLA which was designed to deprive Ortho of the benefits of its exclusive licenses under the PLA and a related technology license agreement. As a result, Ortho requested an order precluding Amgen from making, using or selling EPO in Ortho's exclusive market.

In its answer, Amgen submitted a counterclaim alleging that Ortho had repeatedly breached material provisions of the parties' agreements by: (1) researching two additional drugs developed by Amgen, Hepatitis B (Hep-B) and Interleukin-2 (IL-2), for use outside the scope of their licensed field in the United States; and (2) seeking to compete with Amgen for sale of EPO within Amgen's reserved market in the United States. Amgen further requested an order declaring the PLA terminated by reason of Ortho's defaults thereunder.

On January 31, 1989, Ortho filed a separate action in the United States District Court of Delaware, requesting preliminary injunctive relief to maintain the status quo pending expedited arbitration. See *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 709 F. Supp. 504 (D. Del. 1989), *vacated in part & remanded*, 882 F.2d 806 (3d Cir. 1989). Accordingly, by letter agreement dated April 14, 1989, the parties agreed: (1) to substitute Endispute for the AAA as the administrator of the parties' binding arbitration initiated by Ortho on January 23, 1989, under the parties' September 30, 1985, agreements; (2) to appoint a former United States District Court or Court of Appeals judge as the sole arbitrator in place of the three arbitrators proposed by the AAA; and (3) to attempt to agree on all procedural, discovery and scheduling matters arising throughout the proceeding. If the parties were unable to reach agreement on any such matter, they were to submit the matter to the arbitrator, who would determine all procedural questions under the commercial arbitration rules of the AAA, "as interpreted by the arbitrator in his sole discretion." As a result of the agreement, the District Court of Delaware dismissed Ortho's suit on November 22, 1989, and the current arbitrator was selected to preside over the arbitration.

Since April 1989, the parties have been engaged in ongoing arbitration proceedings before the arbitrator which have proceeded in four separate phases. On April 14, 1990, following the first phase of proceedings, the arbitrator issued a written decision resolving issues regarding the parties' respective rights and obligations to make, supply, and sell biopharmaceutical products, specifically EPO, in the United States. After finding that Amgen had breached the parties' agreements by preventing Ortho from entering the market, the arbitrator entered a mandatory injunction and awarded Ortho $164

million in damages. The decision affirmed Amgen's exclusivity in its contractually reserved dialysis market and ordered that the parties were not to promote or sell the product into each other's exclusive markets. However, it recognized that unintended sales of EPO by one party into the other party's exclusively reserved market would be made, referring to such sales as "spillover." The parties were ordered to cooperate in the development and implementation of an appropriate mechanism to measure spillover sales or, in the absence of agreement, to submit the issue for a hearing and resolution by the arbitrator.

In 1990 and 1991, pursuant to the arbitrator's order, the parties negotiated toward the implementation of a spillover audit mechanism but were unable to reach an agreement. Consequently, in March 1996, the arbitrator began the third[2] phase of proceedings to address the parties' respective claims relative to the determination of the spillover audit methodology for past and future activity by the parties in the market. On September 12, 1997, the arbitrator entered an opinion adopting Amgen's audit methodology with some modification. As such, Amgen was directed to prepare an order calculating past liability and a description of the ongoing audit as to future liability.

While negotiations for and arbitration of the spillover audit mechanism were ongoing, each party made allegations to the arbitrator that sales by the other party into the complaining party's exclusive market were not solely inadvertent but, rather, were, in part, the result of intentional promotion and marketing in violation of the exclusivity provisions of the PLA. Amgen then sought relief from the arbitrator, requesting that he modify the parties' EPO supply contract so as to create a limit on Ortho's purchases of EPO to obviate the perceived abuse.

On January 6, 1992, the arbitrator ruled on Amgen's request, noting that the matter had been argued, but that there were conflicting factual assertions which, in the normal course, would require a fourth phase of proceedings for resolution. The arbitrator denied Amgen's request to modify the parties' supply agreement and instead found that the attempts already underway to develop mechanisms to monitor spillover were the best way to address Amgen's concerns.

On August 31, 1995, Amgen filed its "Demand For Termination Of The [PLA], Accounting Of Ortho's Spillover Sales, And Damages" before the Endispute arbitrator, seeking damages and a determination

---

[2]In September 1991, the arbitrator presided over the second phase of the proceedings regarding Amgen's counterclaim disputes involving Hep-B and IL-2. Subsequently, Amgen was awarded $90 million in damages regarding that issue on September 4, 1992.

of Amgen's right to terminate the PLA for material breach. On September 12, 1995, Ortho challenged the arbitrator's jurisdiction to decide Amgen's claims, relying on the United States Supreme Court holding in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995).

On October 9, 1995, the arbitrator issued a written decision finding that paragraph 10.07 of the PLA was broad enough to encompass an allegation by Amgen that the conduct of Ortho was grounds for the determination that Ortho had breached the PLA and that Amgen was no longer bound by it. However, he rejected Amgen's request to address the issue of "intentional" spillover sales during the third phase of proceedings scheduled to begin in March 1996. After considering Ortho's argument that the referral of the parties did not contemplate any dispute other than that originally framed by the filings with the AAA and further acknowledging that, in 1989, Amgen was not in a position to allege that Ortho was deliberately selling into the dialysis market as Ortho did not have and was not selling EPO when the first arbitration commenced, the arbitrator stated:

> "It is the conclusion of the arbitrator that the termination issue now sought to be raised by Amgen was within the scope of the agreement as to issues to be arbitrated[,] presented to the AAA[,] and later transferred to Endispute by the parties, and further that post arbitration activities are relevant to that determination.
>
> * * *
>
> This being decided[,] it is necessary to conclude that Amgen's demand for termination of the [PLA] is an additional issue cognizable in the arbitration submitted by the parties and that Amgen has a right to the adjudication of that issue."

Following the arbitrator's ruling, Ortho filed a separate arbitration with the AAA pursuant to the arbitration clause in paragraph 10.07 of the PLA on October 2, 1995. On October 25, 1995, Ortho also filed with the AAA a motion seeking to stay portions of the arbitration proceedings arising out of Ortho's October 2, 1995, demand.

Thereupon, on October 27, 1995, Amgen filed its complaint to compel arbitration in the circuit court of Cook County. In its pleadings, Amgen requested the court to stay the separate arbitration filed by Ortho and a declaration that its termination claim was within the scope of the pending Endispute arbitration proceedings, as the arbitrator so found.

On October 30, 1995, one business day later, Ortho filed an action in the United States District Court of Delaware, seeking a preliminary and permanent injunction staying the arbitration of Amgen's termination claim before Endispute. The district court dismissed Ortho's ac-

tion, with prejudice, pursuant to the first-filed rule, as Amgen "won the race" to the courthouse when it filed suit on October 27, 1995.

Immediately thereafter, on November 1, 1995, Ortho filed its notice of removal of the present case to the United States District Court for the Northern District of Illinois. On October 2, 1996, following factual determinations regarding the parties' states of incorporation, Amgen filed a motion to remand for lack of diversity of citizenship pursuant to section 1447 of the United States Code (28 U.S.C. § 1447(c) (1994)).

On May 1, 1997, the district court in Illinois found that there was no subject matter jurisdiction to hear the merits of the case and remanded the case to the circuit court upon Amgen's motion. See *Amgen, Inc. v. Ortho Pharmaceutical Corp.*, No. 95—6310, slip op. at 5 (N.D. Ill. May 2, 1997). Upon remand, on August 1, 1997, Ortho answered Amgen's complaint and filed its own counterclaim seeking an order compelling arbitration of Amgen's termination claim before the AAA and staying arbitration of Amgen's termination claim before Endispute.

On August 22, 1997, Amgen moved for summary judgment, seeking a judgment declaring that Endispute had jurisdiction to arbitrate its termination claim. On November 7, 1997, Ortho opposed that motion and filed a cross-motion for summary judgment, seeking a judgment declaring that the AAA had jurisdiction to arbitrate Amgen's termination claim.

On August 10, 1998, the circuit court granted summary judgment in Amgen's favor and against Ortho. Ortho appeals.

We affirm.

DISCUSSION

■■ Both parties agree that this court reviews the grant or denial of summary judgment *de novo*. *Delaney v. McDonald's Corp.*, 158 Ill. 2d 465, 467, 634 N.E.2d 749, 750 (1994). Consequently, resolution of the issue at bar turns on the proper standard of review to be applied to the arbitrator's decision that Endispute has jurisdiction over the arbitration of Amgen's termination claim. Initially, we note that when deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state-law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 131 L. Ed. 2d 985, 993, 115 S. Ct. 1920, 1925 (1995); see also *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 510 (3d Cir. 1990). Pursuant to the PLA, the relevant state law in this case is that of the State of California to the extent that it is not preempted by the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (1994)).

■ Under California law, as under federal law, the scope of the arbitrator's jurisdiction is decided by the arbitrator. See *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989). California courts are insistent that the arbitrator's decision be given deferential review in the courts should that decision be contested. *Advanced Micro Devices v. Intel Corp.*, 9 Cal. 4th 362, 372, 885 P.2d 994, 999, 36 Cal. Rptr. 2d 581, 586 (1994); *Morris v. Zuckerman*, 69 Cal. 2d 686, 690, 446 P.2d 1000, 1003, 72 Cal. Rptr. 880, 883 (1968). Ortho, however, contends that because the "arbitrability" of the termination claim is an issue of judicial determination, this court should review the arbitrator's decision *de novo*. See *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986). As illustrated below, we believe the disposition of this case would be the same regardless of which standard of review we relied upon.

■ The United States Supreme Court was presented with a similar dispute regarding arbitrability in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995). In that case, the options market maker, its principal, and his wife filed petitions to vacate an arbitration award in favor of the clearing firm because the arbitrators decided that they had the power to rule on the merits of the dispute. In finding that the dispute was arbitrable and subject to independent review by the courts, the Court stated:

> "We believe the answer to the [narrow question of whether the arbitrators or the courts have the primary power to decide whether the parties agreed to arbitrate a dispute's merits] is fairly simple. Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, [citations], so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard of reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate. *** If, on the other hand, the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently. These two answers flow inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." (Emphasis omitted.) *First Options*, 514 U.S. at 943, 131 L. Ed. 2d at 992-93, 115 S. Ct. at 1923-24.

*First Options* is distinguishable from the case *sub judice*, however, in that the threshold issue presented here is *not* whether the arbitrators or the courts have primary power to decide whether the parties have agreed to arbitration; there is no dispute that the underlying termination claim is an arbitrable issue whose final disposition will be determined by an arbitrator. Moreover, arbitrability is presumed when an arbitration clause is present. *Waverly Mineral Products Co. v. United Steelworkers of America, Local No. 8290,* 633 F.2d 682, 684 (5th Cir. 1980). And, an order to arbitrate a particular grievance should not be denied " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *AT&T Technologies,* 475 U.S. at 650, 89 L. Ed. 2d at 656, 106 S. Ct. at 1419, quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 1417-18, 80 S. Ct. 1347, 1353 (1960). As such, the issue here is whether the parties agreed to transfer jurisdiction to the Endispute arbitrator to determine the underlying termination claim. Our decision turns on both the language of the PLA and the April 1989 letter agreement drafted by Ortho and countersigned by Amgen substituting Endispute for the AAA as the binding administrator of the arbitration initiated by Ortho in January 1989.

■ Under private contract law, the court has the duty of interpreting arbitration agreements *de novo* to determine whether the parties intended to arbitrate their claims, as they cannot be forced to arbitrate a particular dispute which they had not agreed to submit to arbitration. *First Options,* 514 U.S. at 945, 131 L. Ed. 2d at 993, 115 S. Ct. at 1925; *AT&T Technologies,* 475 U.S. at 648, 89 L. Ed. 2d at 656, 106 S. Ct. at 1418. Unless the parties "clearly and unmistakably" provide in their agreement that the arbitrator is to decide what issues are arbitrable, that question remains the function of this court. *AT&T Technologies,* 475 U.S. at 649, 89 L. Ed. 2d at 656, 106 S. Ct. at 1418. Ortho contends, however, that Amgen's termination claim was not a part of the original arbitration and, therefore, there is no agreement to arbitrate that specific issue before Endispute. Additionally, Ortho argues that there is no agreement between the parties to replace the AAA with Endispute for the arbitration of *all* disputes concerning the PLA, as the language of the agreement stated that "any dispute" must be arbitrated before a "panel of three (3) arbitrators" under the auspices of the AAA. We disagree. Here, the language of the letter agreement fully empowered Endispute to interpret the PLA and the rights and obligations of the parties. The parties agreed that the arbitrator would have the discretion to determine all procedural mat-

ters and further agreed to be bound by acceptance of the commercial rules of the AAA, as interpreted by the arbitrator in his sole discretion. It is the arbitrator's construction that was bargained for, and so far as his decision concerns the application of the PLA, "the courts have no business overruling him because their interpretation of the contract [may be] different from his." *Waverly*, 633 F.2d at 684. Therefore, if we were to consider the arbitrator's decision under a *de novo* standard, based on strict contract construction, the express language of the letter agreement gives the arbitrator the discretion to determine the scope of the issues presented to him.

On the other hand, Amgen cites the applicability of both California and federal law and contends that the arbitrator's determination must be accorded extreme deference as his power extends to determining the scope of any issue submitted to him. The court in *Waverly Mineral Products Co. v. United Steelworkers of America, Local No. 8290*, 633 F.2d 682 (5th Cir. 1980), held that, under a collective bargaining agreement, it was for the arbitrator to decide disputes arising regarding the interpretation of the contract. *Waverly*, 633 F.2d at 685. Thereafter, the court in *Madison Hotel v. Hotel & Restaurant Employees, Local 25*, 144 F.3d 855 (D.C. Cir. 1998), expounded on *Waverly*, stating, "[a]n arbitrator's view of the issues submitted to him for arbitration therefore receives the same judicial deference as an arbitrator's interpretation of a collective bargaining agreement." *Madison Hotel*, 144 F.3d at 857-58; see also *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989). Both of these decisions make clear that the scope of a submission is a procedural issue over which an arbitrator has discretion.

■ We do agree with Ortho that Amgen could not have anticipated the specific marketplace abuses regarding the selling of EPO by Ortho into Amgen's exclusive market. However, because Amgen alleged in its counterclaim that Ortho breached the PLA by competing with Amgen in its reserved EPO market, pursuant to the April 1989 letter agreement and in accordance with the PLA, the termination claim was implicit in the pleadings originally filed with the AAA and later transferred to the Endispute arbitrator. Consequently, pursuant to California law, the arbitrator, rather than the courts, has the jurisdiction and obligation to decide any issue necessary for the resolution of the controversy submitted for arbitration. Cal. Civ. Proc. Code § 1283.4 (Deering 1981); *Wilson v. Transit Authority*, 199 Cal. App. 2d 716, 19 Cal. Rptr. 59 (1962); see also *Advanced Micro Devices*, 9 Cal. 4th at 372, 885 P.2d at 999, 36 Cal. Rptr. 2d at 586. Therefore, extreme deference should be given to the arbitrator's decision. See *Waverly*, 633 F.2d at 685; *Madison Hotel*, 144 F.3d at 857-58.

Accordingly, the decision of the circuit court granting summary judgment in favor of Amgen and against Ortho is affirmed.

Affirmed.

RAKOWSKI and McNULTY, JJ., concur.