GROSS, J.
Appellant Prestige Protective Corporation (“Prestige”), plaintiff below, timely appeals a June 1, 2000 non-final order compelling arbitration.[1] We affirm, applying Illinois law, and find that the dispute resolution provision in the note at issue was enforceable.
Prestige and appellee Burns International Security Services Corp.[2] (“Burns”) are corporations that supply security guard services. They entered into a contract whereby Prestige sold all of its assets to Burns. At closing, Burns paid $1,014 million of the purchase price in cash. Burns also executed a promissory note which provided for the remainder of the purchase price to be determined based on a “Customer Retention Percentage,” a calculation of the percentage of the amount of carry-over business staying with Burns after the sale. Pursuant to a formula set out in the note, if the calculations resulted in less than an 80% retention percentage on the fifteenth day after “each of the first and second anniversaries of the Closing,” then Burns owed nothing on the note. If the customer retention percentage was equal to or greater than 80% but less than 90%, then Burns owed $50,000. If that percentage was equal to or greater than 90% but less than 100%, then Burns was required to pay $100,000. If that percentage was 100%, the note required Burns to pay $150,000.
The note went on to provide:
Buyer [Burns] shall prepare and deliver to Seller [Prestige] a reasonably detailed report computing the Account Revenues, the Customer Retention Percentage and the principal amount of any payment due hereunder. Within 5 days after delivery of such report, Seller shall notify Buyer of its concurrence to such determinations or its disagreement with such determinations. In the event that the paHies cannot resolve any disagreement as to any amount(s) due under this paragraph within a reasonable period of *313 time, such amount(s) will be determined by Deloitte & Touche LLP, whose fees and expenses will be paid by the non-prevailing party and whose determination will be final and binding.
(Italics supplied).
A year after the closing, Burns submitted the report required under the note. The report indicated that the customer retention percentage was less than 80%, so that no additional money was due under the note. On July 20, 1999, Prestige responded by declaring that the note was in default and demanding payment of $300,000 immediately, as well as the surrender of “all assets of the buy/sell agreement.”
On November 3, 1999, Prestige filed a complaint in the circuit court seeking the payment it believed to be due. Count I was a claim for breach of contract, alleging that Burns failed to make a payment required by the note. Although Count II is entitled “Fraud,” it states nothing more than a claim for a willful breach of contract, with the allegation that Burns “knowingly and deliberately falsified or manipulated the applicable accounts and revenues” to deprive Prestige of “appropriate payment due under the note.” Entitled “Breach of Duty of Good Faith,” Count III is a breach of contract action contending that if Burns had acted in good faith in computing the customer retention percentage, then Prestige would have been entitled to payments under the note. Count IV, labeled “Uneonscionability,” fails to state a cause of action. The central issue raised by the complaint concerns the correct calculation of the customer retention percentage. This issue, is a “disagreement as to any amount(s) due under this paragraph” within the meaning of the alternative dispute resolution provision quoted above.
Burns filed a notice of removal to federal court on November 23, 1999. The next day, Burns served a motion to compel arbitration. The federal court remanded the case on December 29, 1999, finding that the record before it was insufficient to show a basis for diversity jurisdiction.
After remand to the state court, Burns filed a request for admissions directed at factual issues relating to diversity jurisdiction; it provided that the request was being made “without waiving its right to compel arbitration.” On January 26, 2000, Burns served a motion to compel arbitration in the Florida court.
Burns removed the case to federal court on February 10, 2000, and the federal court again remanded the case to state court on March 15, 2000.
The trial court granted Burns’s motion to compel arbitration, finding that the alternative dispute resolution clause encompasses all the “well-pled claims”[3] in tffe complaint and that Burns had not waived arbitration by removing the complaint to federal court. The court reserved jurisdiction to “enter an award after completion of the dispute resolution process.”
The note at issue provides that it “shall be governed by and construed in accordance with the internal law (and not the law of conflicts) of the State of Illinois.” Because the issues raised on this appeal deal with the construction and application of the alternative dispute resolution clause to which the parties agreed, this court’s review is de novo. See Ocwen Fed. Bank FSB v. LVWD, Ltd., 766 So.2d 248, 249 (Fla. 4th DCA 2000).
Both Illinois and Florida law enforce agreements to various forms of alternative dispute resolution, just as binding arbitration agreements are enforced. This is so even though the scope of the dispute resolver’s authority may be more limited than that afforded an arbitrator and the proceedings may not resemble a traditional *314 arbitration. See, e.g., Fla. Farm Bureau Cas. Ins. Co. v. Sheaffer, 687 So.2d 1331, 1333-34 (Fla. 1st DCA 1997) (involving an insurance appraisal); Gen. Cas. Co. v. Tracer Indus., Inc., 285 Ill.App.3d 418, 220 Ill.Dec. 930, 674 N.E.2d 473, 474 (1996) (concerning an insurance appraisal); Beard v. Mount Carroll Mut. Fire Ins., 203 Ill.App.3d 724, 148 Ill.Dec. 810, 561 N.E.2d 116, 118 (1990) (regarding an insurance appraisal); Himmelstein v. Valenti Dev. Corp., 103 Ill.App.3d 911, 59 Ill.Dec. 542, 431 N.E.2d 1299, 1301 (1982) (regarding resolution of construction disputes by architect). But see Allied Contracting Co. of Ill. v. Bennett, 110 Ill.App.3d 310, 66 Ill.Dec. 54, 442 N.E.2d 326, 327 (1982) (clause requiring submission of construction disputes to engineer was not an “arbitration” under the Illinois Uniform Arbitration Act).[4]
In Florida Farm Bureau, the first district enforced an insurance policy’s requirement for an appraisal the same as it would an agreement to arbitrate:
Despite these traditional distinctions between appraisal and arbitration, with the increased use of various forms of alternative dispute resolution, Florida courts have interpreted appraisal provisions similar to the instant provision as constituting binding arbitration agreements. State Farm Fire & Cas. Co. v. Middleton, 648 So.2d 1200, 1202 (Fla. 3d DCA 1995); Preferred Mut. Ins. Co. v. Martinez, 643 So.2d 1101 (Fla. 3d DCA 1994); American Reliance Ins. Co. v. Village Homes at Country Walk, 632 So.2d 106 (Fla. 3d DCA 1994); Intracoastal Ventures Corp. v. Safeco Ins. Co. of Am., 540 So.2d 162 (Fla. 4th DCA 1989); U.S. Fire Ins. Co. v. Franko, 443 So.2d 170 (Fla. 1st DCA 1983); Transamerica Ins. Co. v. Weed, 420 So.2d 370 (Fla. 1st DCA 1982). For example, in Weed, this court treated as an arbitration agreement an appraisal provision virtually identical to the provision at issue here, noting that “[t]he ‘appraisal’ provision in the policy is in fact an agreement to submit to arbitration in the event of disagreement on the amount of loss.” 420 So.2d at 371 n. 1.
687 So.2d at 1333. The provision in this case that the parties would submit disputes to an expert auditor, Deloitte and Touche, LLP, is similar to those contracts that resolve valuation disagreements by submission to an appraiser.
Prestige challenges the trial court’s rejection of its claim that Burns waived the right to arbitrate. In James Eckmann Assocs., Inc. v. ABC Int’l Traders, Inc., No. 95C650, 1995 WL 324555, reconsidered, 1995 WL 506611 (N.D.Ill.1995), the plaintiff filed suit on a contract in Illinois state court. Without raising the arbitration issue in the Illinois court, the defendant removed the case to federal court based on diversity jurisdiction. About a month after removal, the defendant filed a motion to compel arbitration as its first pleading in the federal court.
The James Eckmann court found that the defendant had not waived arbitration. It noted that another federal decision, Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388 (7th Cir.1995), had found a waiver where the defendant did not move for an order on arbitration “at the same time” as it removed the case to federal court. James Eckmann, 1995 WL 324555 . at *2. The James Eckmann court found it significant that in Cabine-tree, the defendant had waited nine months after removal before dropping “a bombshell into the proceedings” by moving for a stay pending arbitration. Id. at *1.
Under either federal decision, Burns’s request for arbitration would be timely. *315 Burns filed its motion to compel arbitration in the federal court on November 24, 1999, the day after it filed the notice of removal. Burns filed a second request for arbitration in the Florida court within a month after the case was remanded the first time.[5] In the absence of any Illinois authority to the contrary, the James Eckmann decision is well reasoned and persuasive; the facts are virtually indistinguishable from this case and James Eckmann also dealt with an Illinois agreement. See Bradshaw v. State, 286 So.2d 4, 6 (Fla.1973). We therefore follow it in this case.
Prestige argues that it never agreed to submit the particular dispute in question for non-judicial resolution. Illinois law is clear that the parties are bound to arbitrate only those issues which “by clear language” they have agreed to arbitrate. Rauh v. Rockford Prods. Corp., 143 Ill.2d 377, 158 Ill.Dec. 523, 574 N.E.2d 636, 641 (1991); Flood v. Country Mut. Ins. Co., 41 Ill.2d 91, 242 N.E.2d 149, 151 (1968). The trial court found that the disputes contained in the well pled counts of the complaint fell under the arbitration clause.
Prestige argues that under the express language of the dispute resolution clause (“In the event that the parties cannot resolve any disagreement as to any amount(s) due under this paragraph ....”) refers only to disagreements about Burns’s preparation of the reports, that is the mathematical computations only. Prestige’s argument is that by agreeing to that clause, it never agreed to submit disputes about the “legitimacy of the data upon which the report was prepared” that is, the customer and revenue accounts which Burns used to extract the figures used in its computations.
Illinois law recognizes a public policy favoring the submission of disputes to arbitration, but does not allow this policy to be used to extend arbitration beyond the scope of the parties’ agreement. See United Cable Television Corp. v. Northwest Ill. Cable Corp., 128 Ill.2d 301, 131 Ill.Dec. 172, 538 N.E.2d 547, 551 (1989). On the other hand, Illinois courts will not deny a request for arbitration “ ‘unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.’ ” Amgen, Inc. v. Ortho Pharm. Corp., 303 Ill.App.3d 370, 236 Ill.Dec. 799, 708 N.E.2d 385, 390 (1999) (quoting AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960))).
To support its argument, Prestige relies primarily on this court’s recent decision in Ocwen which found that an agreement to arbitrate “whether an item included in Operating Expenses as determined by Landlord was properly includable pursuant to the terms of the Lease” was not broad enough to require the parties to arbitrate the methodology used to calculate the amount of the expense items. 766 So.2d at 249.
Ocwen is inapplicable. First, it applies Florida, and not Illinois, law. Second, the language in the Ocwen arbitration clause was very specific as to what types of disputes were arbitrable; it could not be reasonably read to include an agreement to arbitrate the methodology of calculating “additional rent” under a lease without *316 doing violence to the language of the parties’ agreement. Id.
In this case, the parties agreed to submit any disputes related to the amount due “under this paragraph”; the paragraph requires Burns to “prepare and deliver” a “detailed report” substantiating the amount it claims is due under the note. Applying the standard used by the Illinois courts, it cannot be said “with positive assurance” that this language could not be reasonably read as including an audit or review of the account information used to prepare the reports.
Prestige next argues that the note’s “arbitration” clause was unenforceable since it did not provide sufficient procedural guidelines for the arbitration proceeding. Prestige cites cases from this court and from Illinois holding that for the arbitration act to apply, the arbitration agreement must be sufficient to identify the issues to be submitted for arbitration and to set forth the procedures for arbitration. See Intracoastal Ventures Corp. v. Safeco Ins. Co. of Am., 540 So.2d 162, 164 (Fla. 4th DCA 1989) (discussing an insurance appraisal); Allied Contracting, 66 Ill.Dec. 54, 442 N.E.2d at 328 (dealing with the submission of construction disputes to engineer for resolution).
However, Illinois courts have enforced arbitration clauses that are no more specific about arbitration procedure than the clause in this case. For example, in Him-melstein, the Illinois court enforced the following arbitration clause:
Any dispute between Purchaser and Seller with respect to labor and/or material, or whether the residence has been constructed as herein required, shall be determined by the architect preparing plans and specifications and such determination shall be conclusive and binding upon Purchaser and Sellei*.
59 Ill.Dec. 542, 431 N.E.2d at 1300. As discussed above, Illinois law recognizes a variety of dispute resolution options which do not have the well defined procedures of more traditional forms of arbitration.
Prestige’s final argument is that Burns failed to comply with a condition precedent to invoking the dispute resolution clause because it did not provide copies of documentation to support its computations. No express language in the clause imposes such a condition. Even if such an obligation could be implied, the requirement was waived by Prestige’s July 20 declaration of default, without any attempt to “resolve any disagreement” by requesting documentation or otherwise initiating settlement discussions.
WARNER, C.J., concurs,
KLEIN, J., concurs specially with opinion.

. Florida Rule of Appellate Procedure 9.130(a)(3)(C)(v), provides for appellate review of non-final orders “that ... determine ... the entitlement of a party to arbitration.”

. The name of the appellee corporation changed after the contract was signed.

. At the hearing, the trial court opined that count IV of the complaint might not state a legally sufficient claim of uneonscionability, but since no motion to dismiss had been filed, that issue could not be resolved.

. Both sides cite the Illinois Uniform Arbitration Act in their briefs. It is not clear whether the Act applies to the parties’ agreement in this case. In Bailey v. Timpone, 75 Ill.2d 539, 27 Ill.Dec. 785, 389 N.E.2d 1193, 1196 (1979), the Illinois Supreme Court treated an appraisal clause in a lease as the equivalent of an arbitration proceeding, but noted that the Act “is not directly applicable since the lease did not technically call for arbitration....”

. Prestige argues that the second attempt at removal waived arbitration even if the first did not. By the time Burns made its second attempt to remove the case to federal court, it had already filed Lwo motions to compel arbitration-one in federal court and one in Florida court. The ruling on the second removal request had the effect of determining which court would rule on the motions to compel. The second removal attempt was not inconsistent with the pending motions to compel.