2022 IL App (1st) 211316-U

FIRST DISTRICT,
FIRST DIVISION
October 17, 2022

No. 1-21-1316

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| POLICEMEN'S BENEVOLENT & PROTECTIVE ASSOCIATION OF ILLINOIS, UNIT 156 A - SERGEANTS, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Petitioner-Appellant, | ) | |
| v. | ) ) | No. 2020 CH 06601 |
| CITY OF CHICAGO, | ) ) | Honorable Sophia Hall, |
| Respondent-Appellee. | ) ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1  *Held*:  (1) Arbitrator did not exceed his authority in deciding issues presented to him by the parties. (2) Arbitrator properly apportioned his fees and expenses between the parties pursuant to their collective bargaining agreement.

¶ 2  In 2017, a complaint was initiated against Chicago Police Department Sergeant Bryan Topczewski for, among other things, making offensive Facebook posts. Following an investigation, CPD's Bureau of Internal Affairs ("BIA") recommended a 15-day suspension.

¶ 3        Topczewski's union, the Policemen's Benevolent & Protective Association, Unit 156-A Sergeants ("PBPA"), filed a grievance challenging the suspension on his behalf. An arbitrator reversed the suspension, finding no reasonable cause for the investigation to exceed the 18-month time limit in the collective bargaining agreement ("CBA") between PBPA and the City of Chicago. In reaching this decision, the arbitrator agreed with the City's analysis of when the investigation began and ended and rejected PBPA's contrary position. The arbitrator further found the decision did not wholly sustain either party's position and apportioned his fees and expenses between the parties, with the City responsible for 75 percent and PBPA responsible for 25 percent.

¶ 4        PBPA filed a petition in the circuit court to modify the arbitration award to omit the arbitrator's findings about when the investigation began and ended, and assign all costs to the City. The City filed a counterclaim to confirm the award. The circuit court denied PBPA's petition and confirmed the award. PBPA appeals. We affirm.

¶ 5                                          BACKGROUND

¶ 6        On September 14, 2017, CPD Lieutenant Michael Ryle submitted a complaint initiation report against Topczewski, alleging that (1) Topczewski posted "memes that were misogynistic, racially bias[ed], Islamophobic, homophobic and anti-Semitic" on his personal Facebook account; (2) Topczewski referred to black officers as "officers of color," which the complainant, Officer Erin Jones, found offensive; and (3) when Jones filed a report against Topczewski, he retaliated by filing a counter-complaint about her on the same day.

¶ 7        On September 18, 2017, BIA assigned the complaint to Sergeant Marco Tirado for investigation. Tirado issued a report on April 10, 2019, sustaining the allegation regarding Topczewski's Facebook posts, not sustaining the remaining allegations, and recommending a 15-

day suspension. Tirado's report underwent command channel review pursuant to Special Order S08-01-03, which provides:

> "The first-level exempt member in the accused member's chain of command, upon receipt of a final report of an investigation, will review the investigation to ascertain the adequacy and timeliness of the investigation, determine that any recommendation is appropriate, and judge the soundness of the conclusions and findings, including returning the investigation for further action, if necessary."

Command channel review was completed on June 3, 2019, and the discipline was served on Topczewski on August 27, 2019.

¶ 8     On the same day, Topczewski, through the PBPA, filed a grievance challenging his suspension under sections 8.1 and 9.4 of the CBA in effect from 2012 to 2016. Section 8.1 provides that "[n]o Sergeant *** shall be suspended, relieved from duty, or disciplined in any manner without just cause." Section 9.4, "Authority of Arbitrator," provides that if a grievance proceeds to arbitration, the arbitrator "shall only consider and make a decision with respect to the specific issue or issues presented *** and shall have no authority to make a decision on any other issues not so submitted." Section 9.4(C) provides:

> "[I]n the event the Employer recommends a disciplinary penalty upon a Sergeant as a result of a disciplinary investigation that took more than eighteen (18) months to conclude, as measured from the date on which the disciplinary investigation was opened, upon request of Unit 156-Sergeants, the Arbitrator *** shall convene a hearing, preliminary to the hearing on the merits, to determine whether there was a reasonable basis for the investigation to take longer than eighteen (18) months."

The CBA does not define when a disciplinary investigation begins and ends.

¶ 9        The grievance proceeded to arbitration under Arbitrator Peter Meyers. PBPA requested a preliminary 9.4(C) hearing to determine whether there was reasonable cause for the disciplinary investigation to exceed 18 months. At the hearing on February 18, 2020, the arbitrator stated that "[t]he parties *** have differing views of what the issue is" and invited them to "put that on the record as part of their opening statement." The City framed the issue as follows: "[W]as there a reasonable cause for the disciplinary investigation into grievant's conduct *** to exceed 18 months? If not, what is the appropriate remedy?" It argued that a "disciplinary investigation was meant to begin on the date of assignment to an investigator and to conclude on the date the summary report was signed and approved by the investigative agency" and that "command channel review was never negotiated or bargained to be included in that 18-month period." Under the City's accounting, the investigation took 18 months and 22 days, which the City conceded was over the limit, but it argued that it was reasonable under the circumstances to exceed the deadline by "a mere three weeks."

¶ 10        PBPA framed the issue as follows: "[W]as there a reasonable basis for the City's investigation *** to exceed 18 months in violation of Section 9.4(C) of the agreement between the City and Unit 156-A? If not, what is the appropriate remedy?" It argued that "[i]t took 1 year, 11 months, and 14 days from *** the date of the complaint until Sergeant Topczewski was served with a 15-day suspension" and there was no reasonable explanation for why the investigation "well exceeded the 18-month timeframe spelled out in Section 9.4(C)."

¶ 11        Donald O'Neill testified that as commander of the Management and Labor Affairs Section of the CPD, he was involved in negotiating the 2012-2016 CBA. He recalled that PBPA wanted a 12-month limit on disciplinary investigations and "made it clear that all they were

looking for was just the part of the investigation that [BIA] conducted, what the investigator does, not command channel review or any of the administrative procedures that follow."

¶ 12      Attorney David Johnson represented the City in negotiations for the 2012-2016 CBA and drafted section 9.4(C). He testified that PBPA was concerned that sergeants were prejudiced by "unduly prolonged investigations" because they "were being brought in *** to give statements two, three, four years after the event in question." He intended the term "disciplinary investigation" in section 9.4(C) to be "in response to their complaints *** [about] the undue length of time the investigators in the agencies were taking to bring officers in to give their statements." Command channel review was not discussed.

¶ 13      Tina Skahill, who oversees BIA investigations as the CPD Deputy Director of Internal Affairs, testified that a disciplinary investigation starts "[a]t the time the investigator is assigned the case" and ends when the investigator's report is approved. She did not consider command channel review part of the investigation. Similarly, Sergeant Luke Connolly of the BIA testified that a disciplinary investigation begins when assigned to an investigator and ends when the investigator submits a summary report. Command channel review is not part of the investigation "unless someone in command channel review *** sends it back to the investigator for additional work," which would be reflected in a new final report date.

¶ 14      Sergeant Tirado was assigned to investigate the complaint on September 18, 2017. "[I]mmediately after" receiving the assignment, he attempted to contact the complainant, but she was on furlough. Due to "excessive case load" and Tirado's extended medical leave for an off-duty injury, he did not attempt to contact her again until "the following year." He eventually interviewed her on June 26, 2018 and then interviewed Topczewski on September 26, 2018. In November 2018, he submitted a draft report to his case management officer. After receiving and

completing multiple edits and being on furlough from March 21 to April 9, 2019, Tirado submitted his final report on April 10, 2019.

¶ 15    PBPA's only witness was Paul Bilotta, who was involved in negotiations for the 2012-2016 CBA as vice president of the Chicago Police Sergeants Association. Bilotta understood the 18-month period in section 9.4(C) to include the command channel process. Sergeants were prejudiced by an ongoing investigation "sit[ting] on a deputy chief's desk" because they could not participate in departmental award ceremonies, were not considered for merit selection, and if they retired under investigation, might not get a retirement star or retirement ID card. Bilotta testified that these concerns were discussed in the negotiation.

¶ 16    The parties filed posthearing briefs. PBPA argued that "the clock started ticking on September 14, 2017," when the complainant made a formal allegation of misconduct against Topczewski, and "[i]t wasn't until 713 days later that the Department served him with a recommended 15-day suspension. Sgt. Tirado's portion of the investigation alone took 569 days." PBPA further argued there was no reasonable cause for the investigation, which was "anything but complex," to exceed 18 months. The City argued that command channel review was not considered in drafting section 9.4(C), and the disciplinary investigation began when Tirado was assigned the investigation on September 18, 2017 and ended when he submitted his final report on April 10, 2019.

¶ 17    On August 12, 2020, the arbitrator issued an opinion and award in which he found "significant disagreement" between the parties as to how the 18-month period in section 9.4(C) should be calculated, and "[t]he only way to determine whether the investigation at issue was timely completed is to resolve these conflicts over when the eighteen-month investigatory period begins and ends." He agreed with the City that the disciplinary investigation encompassed only

"the formal inquiry by a BIA investigator"—in this case, September 18, 2017 to April 10, 2019. He found no reasonable cause for the investigation to exceed 18 months and reversed Topczewski's suspension. Finally, the arbitrator found that "this decision does not wholly sustain the position of either party" and apportioned 75 percent of his fees to the City and 25 percent to PBPA.

¶ 18    On November 4, 2020, PBPA filed a petition in the circuit court to modify the arbitration award, arguing that (1) the arbitrator exceeded his authority in making findings as to when the disciplinary investigation began and ended because the issue was not raised by the parties, and (2) because the arbitrator sustained PBPA's grievance "in its entirety," he should have required the City to bear all fees and expenses of the arbitration. The City filed a counterclaim to affirm the award.

¶ 19    On September 24, 2021, the circuit court denied PBPA's petition and granted the City's counterclaim, finding that the parties "certainly submitted to the arbitrator the consideration of the evidence concerning the beginning and the end" of the investigation.

¶ 20                                   ANALYSIS

¶ 21    Judicial review of an arbitration award is "extremely limited" because the parties agreed to submit their dispute to an arbitrator instead of the judicial process. *Herricane Graphics, Inc. v. Blinderman Construction Co.*, 354 Ill. App. 3d 151, 155 (2004). Section 13(a) of the Uniform Arbitration Act permits modification of an arbitral award where "[t]here was an evident miscalculation of figures" or "[t]he arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted." 710 ILCS 5/13(a)(1), (2) (West 2020). We review the trial court's decision to confirm an arbitral award *de novo. Herricane*, 354 Ill. App. 3d at 157.

¶ 22    PBPA argues that the arbitrator "exceeded his authority" by "rul[ing] on a matter not submitted to him" in determining when a disciplinary investigation began and ended for purposes of section 9.4(C), since the only issue before him was whether there was reasonable cause for the investigation to exceed 18 months.

¶ 23    To determine whether parties submitted an issue to an arbitrator, we examine both the evidence presented at the arbitration hearing and the parties' written submissions. See *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 389 (1991). Although the parties agreed that the investigation exceeded 18 months, they disagreed as to how much, which bore directly on the issue of reasonableness. The City argued the investigation only encompassed the time the case was assigned to Tirado, *i.e.*, 22 days over the limit; PBPA argued it started when the complaint was initiated and did not end until the discipline was served on Tirado, *i.e.*, 166 days over the limit. The majority of the testimony pertained to this timing issue, particularly in regards to command channel review. O'Neill and Johnson testified that command channel review was not discussed in negotiating the 2012-16 CBA. Skahill and Connolly testified that they did not consider command channel review to be part of the investigation. PBPA did not object to any of this testimony on grounds of relevance and cross-examined Connolly:

> "[Counsel for PBPA]: Would you agree that the command channel review *** is part of the investigation process, correct?
>
> CONNOLLY: I would say, no, it's not part of the investigation."

PBPA's sole witness, Bilotta, testified that during negotiations for the 2012-16 CBA, one of the union's concerns was that sergeants were prejudiced by an investigation "sit[ting] on a deputy chief's desk" during command channel review.

¶ 24    In its posthearing brief, PBPA argued that "the clock started ticking" as soon as a complaint was initiated against Topczewski, and the City's argument to the contrary "is without merit and should be ignored." PBPA further argued that "[t]he investigation continued through the Command Chan[n]el Review process."

¶ 25    The parties clearly submitted to the arbitrator the issue of when the disciplinary investigation began and ended. As accurately stated by the arbitrator in his response to PBPA's motion for reconsideration: "The parties at the hearing and in their post hearing briefs extensively argued the issue as to whether the Command Channel Review should be considered part of the investigation process. There was no question in my mind that the parties wanted a ruling from me on that issue."

¶ 26    PBPA next claims there was "an evident miscalculation of figures" (710 ILCS 5/13(a)(1) (West 2020)) in the arbitrator's apportionment of fees. Section 9.5 of the CBA provides: "The fees and expenses of the Arbitrator shall be borne by the party whose position is not sustained by the Arbitrator. The Arbitrator, in the event of a decision not wholly sustaining the position of either party, shall determine the appropriate allocation of his/her fees and expenses." PBPA argues that it cannot be allocated costs because the arbitrator reversed Topczewski's suspension and sustained the grievance "in its entirety." But section 9.5 uses the term "position," not "grievance." The arbitrator sustained the City's position as to when the disciplinary investigation began and ended, and rejected PBPA's contrary position. The arbitrator agreed with PBPA that it was unreasonable under the circumstances for the investigation to exceed the 18-month limit and reversed Topczewski's 15-day suspension. Thus, his decision did not wholly sustain the position of either party and he properly used his discretion under section 9.5 to allocate his fees and expenses between the parties.

¶ 27                                    CONCLUSION

¶ 28          For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 29          Affirmed.