2024 IL App (1st) 231690-U

No. 1-23-1690

Filed October 9, 2024

Third Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CW PRO DESIGN, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 L 5470 |
| | ) | |
| BRATT CAPITAL PARTNERS, LLC, | ) | |
| JASON NITTI, and SEBASTIAN MADEJ, | ) | Honorable |
| | ) | Thomas More Donnelly, |
| Respondents-Appellants. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Confirmation of arbitration award affirmed where appellant failed to provide a record of the hearing before the circuit court to enable review.

¶ 2     Bratt Capital Partners, LLC (Bratt Capital), Jason Nitti, and Sebastian Madej (collectively, respondents) appeal the circuit court's order granting CW Pro Design, LLC's (CW) petition to

convert an arbitration award to judgment and denying the respondents' motion to either vacate or modify the arbitration award. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4        CW filed a "Petition to Convert Arbitration Award to Judgment" in the circuit court, naming Bratt Capital, Nitti, and Madej as respondents. The petition asserted that CW had sought arbitration based on a contract with the respondents and was issued an award of $97,096.77 plus $4650 in fees. CW sought to convert the award to an enforceable judgment.

¶ 5        A 17-page written document captioned "Consulting Services Contract" (contract) was attached as an exhibit. The contract states that it was "made between Jason J. Nitti and Sebastian Madej members of Bratt Capital Partners, LLC or assignee ('Client') and CW PRODESIGN LLC." The contract indicates that its purpose was to employ CW for professional advice, direction, and guidance in the development and construction of a car wash facility located in Waukegan, Illinois. On the page provided for signatures, Nitti and Madej are both listed as "Client." Both signed on the line provided. On a line above Nitti's signature labelled "Title," the word "Principal" is typed in. On the title line above Madej's signature, the word "Manager" is typed in. On the same page, Nick Spallone signed on behalf of CW. The words "Principal | CW PRODESIGN LLC" are printed next to his printed name. The contract contained a provision requiring the parties to submit any claim arising out of the contract seeking more than $7500 to binding arbitration.

¶ 6        A copy of the arbitration award was also attached. The two-page award states that an evidentiary hearing took place on May 8, 2023, in accordance with the rules of the American Arbitration Association (AAA). CW appeared at the hearing but Bratt Capital, Nitti, and Madej failed to appear "after due notice by mail." The award goes on to state that CW presented evidence

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

that, *inter alia*: (1) CW and the respondents agreed to the contract, (2) CW performed services pursuant to the contract, (3) CW invoiced for its services, (4) respondents made partial payments for a time, then ceased making payments, and (5) respondents owed a balance of $97,096.77. CW was awarded that amount plus $4650 in fees against Bratt Capital, Nitti, and Madej.

¶ 7    Respondents filed a motion to vacate or modify the arbitration award. They asserted that, contrary to the award's statement that they were notified by mail, they received no notice of the arbitration hearing. For that reason, the respondents argued the award should be vacated in its entirety. Affidavits from both Nitti and Madej were attached attesting that neither received any notice of an arbitration hearing. Their motion also reports that the respondents attempted to obtain records from AAA related to notice of the arbitration hearing, but AAA had not responded.

¶ 8    The respondents also acknowledged the contract with CW but asserted that Nitti and Madej were not parties to it. Rather, they only signed on behalf of Bratt Capital. Thus, the respondents requested, in the alternative, that the award be vacated as to Nitti and Madej in their personal capacities.

¶ 9    CW responded that Nitti and Madej were parties to the contract based on its recital of who the contracting parties were. Additionally, CW asserted that notice of the arbitration hearing was sent by certified mail, along with "dozens of emails." CW attached a copy of an email message it received in January 2023 from AAA acknowledging its demand for arbitration. The message indicates a copy of the message was also sent to a Yahoo email address associated with Nitti. An April 21, 2023, letter from AAA is also attached. The letter states that a preliminary telephone conference took place on April 19 and a notice of hearing was enclosed with the letter. The notice indicated a hearing would take place by videoconference using the Zoom application on May 8, 2023, at 10 a.m. Central time. A Zoom URL appears along with a numeric meeting number and

passcode. The letter and notice indicate that a copy was sent to Nitti at the same Yahoo email address and by certified mail. A 22-digit certified mail number is printed. A May 8 letter from AAA was also attached. This letter states that the hearing was closed as of that date. The letter indicates a copy was sent by email to Nitti at the Yahoo address. CW also attached a copy of a February 1, 2023, email message it sent to Madej at a Gmail address associated with him, forwarding a message from AAA. Another message dated April 25, 2023, was included in which CW sent AAA electronic copies of documents. The email addresses associated with Nitti and Madej were included as recipients.

¶ 10    Respondents replied that Nitti and Madej were not parties to the contract, as they signed in their respective capacities as Principal and Manager of Bratt Capital, which were indicated with their signatures. In addition, the respondents asserted that notice was deficient since section 5 of the Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/5(a) (West 2022)) requires either personal service or service by registered mail and neither method was used. Further, they noted that the copy of the notice of hearing CW presented indicates that only Nitti was sent a copy. It does not indicate a copy was sent to Madej or Bratt Capital. As for the certified mail notice, respondents assert that Nitti did not receive it. They produced tracking information from the Postal Service that states the item was delivered to an agent for final delivery in Wood Dale, Illinois on April 28, 2023.

¶ 11    The circuit court entered a one-page order stating that CW's petition was granted, and the respondents' motion was denied in its entirety. The order further entered judgment in favor of CW against the respondents in the sum of $101,746.77. Respondents filed a timely notice of appeal.

¶ 12    On appeal, respondents reiterate their arguments that Nitti and Madej were not parties to the Agreement, and they were not given notice of the arbitration hearing.

¶ 13    After appellate briefing was completed, the respondents filed a motion to disqualify CW's counsel due to a conflict of interest and to strike CW's brief. The respondents asserted that CW's counsel, Alan Jacob, previously represented them regarding a real estate transaction and zoning application. Jacob later became counsel for CW and represented CW in the arbitration proceedings, before the circuit court, and before this court. CW, through different counsel, filed a response arguing that the respondents waived the issue by failing to raise it before the trial court. CW also filed a motion to strike an affidavit from the respondents' counsel, which was attached to the respondents' motion to disqualify. By prior order, we took these motions with the case.

¶ 14                               II. ANALYSIS

¶ 15    We first address the respondents' motion to disqualify CW's counsel and strike CW's brief. The respondents' motion and attached exhibits demonstrate that they had notice of the facts supporting the alleged conflict of interest when this matter was initiated in the circuit court. The respondents failed to raise the issue in the trial court and filed their motion to disqualify two months after the completion of briefing before this court. A motion to "disqualify should be made with reasonable promptness after a party discovers the facts which [led] to the motion." (Internal quotation marks omitted.) *In re Estate of Klehm*, 363 Ill. App. 3d 373, 377 (2006). "A party waives any objection to an alleged attorney conflict of interest if it fails to assert that conflict promptly." *International Insurance Co. v. City of Chicago Heights*, 268 Ill. App. 3d 289, 302-03 (1994). We find that the respondents failed to promptly raise this issue and thereby waived the alleged conflict of interest. Accordingly, we deny the motion to disqualify and strike CW's brief. CW's motion to strike the affidavit of respondent's counsel is denied as moot.

¶ 16    The Arbitration Act (710 ILCS 5/1 *et seq.* (West 2022)), which Illinois adopted in 1961, enables a party to petition the circuit court to confirm an arbitration award and, if the award is so

confirmed, enter a corresponding enforceable judgment on behalf of the applicant. *Id*. §§ 11, 14. The Arbitration Act also enables a party to petition the circuit court to vacate or modify an arbitration award. *Id*. §§ 12, 13. A party seeking such relief may initiate an action or petition for the same in response to an action brought to confirm the award. *Id*. § 11; 3 Ill. Law & Prac. *Arbitration and Awards* § 34. (August 2024 Update). Either way, the challenger has the burden to prove by clear and convincing evidence that an arbitration award was improper. *Herricane Graphics, Inc. v. Blinderman Construction Co., Inc.*, 354 Ill. App. 3d 151, 156 (2004).

¶ 17        Illinois law favors arbitration as "an effective, expeditious, and cost-efficient method of dispute resolution." *Salsitz v. Kriess*, 198 Ill. 2d 1, 13 (2001). So, courts will construe arbitration awards, "wherever possible," to uphold them. *First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 47 (2009) (quoting *Salsitz*, 198 Ill. 2d at 13). A petition to vacate will be granted only in "extraordinary circumstances." *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 564 (2005).

¶ 18        Judicial review of an arbitration award is intended to be more limited than appellate review of a trial court's decision. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 394 (1991). An award will not be set aside "for errors in judgment or mistakes of law or fact." *Id*. at 391. This limited scope of review reflects the principle that an "arbitration award should be the end, not the beginning, of litigation." *Munizzi v. UBS Financial Services, Inc.*, 2021 IL App (1st) 201237, ¶ 23 (quoting *Perkins Restaurants Operating Co. v. Van Den Bergh Foods Co.*, 276 Ill. App. 3d 305, 309 (1995)). The Arbitration Act provides five grounds upon which a reviewing court can vacate or modify an arbitration award. The court must vacate an award where:

"(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown thereof or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection ***." 710 ILCS 5/12(a) (West 2022).

¶ 19    Here, the respondents cite the first ground as the basis to vacate the arbitration award, asserting that the award was procured by corruption, fraud, or other undue means. However, their specific claim is that they were not provided notice by personal service or registered mail in accordance with section 5 of the Arbitration Act. *Id*. § 5. Thus, despite their citation to the first ground, the respondents in substance argue the fourth ground—that the arbitrator conducted the hearing contrary to section 5 as to substantially prejudice their rights. *Id*. § 12(a)(4).

¶ 20    Section 5 does indeed require that arbitrators "cause notification to the parties to be served personally or by registered mail not less than 5 days before the hearing." *Id*. § 5(a). Since the Arbitration Act is deemed part of a contract containing an arbitration clause (*Weiss v. Fischl*, 2016 IL App (1st) 152446, ¶ 19) and the contract did not provide for a different method of notice, the notice provision of section 5 applied here.[2] However, Illinois courts have found certified mail with

---

[2]We note that the respondents' citation to *MacDonald v. Bond*, 96 Ill. App. 116 (1901), is inapposite, as that case predated the enactment of the Arbitration Act. See *Advocate Financial Group v. Poulos,* 2014 IL App (2d) 130670, ¶ 71 n. 3 (similarly finding a case predating the adoption of the Arbitration Act inapplicable). We also note that there is no constitutional due process right to notice to an arbitration hearing

return receipt requested to be functionally equivalent to registered mail. *Advocate Financial Group v. Poulos*, 2014 IL App (2d) 130670, ¶ 73. Moreover, courts may choose to not enforce the notice provision if the respondent received actual notice. *Id*. ¶ 74.

¶ 21 In this case, CW presented evidence demonstrating that certified mail notice of the arbitration hearing was sent to Nitti in addition to email notices to both Nitti and Madej. Nitti and Madej presented affidavits attesting that they never received notice.

¶ 22 At this point, our review is hindered by the lack of a record of the hearing on the parties' opposing petitions in the circuit court and the order's omission of the court's reasoning for its decision. The order appealed from, which was prepared by the respondents' counsel, fails to indicate the nature of the proceeding, merely stating that the court was "advised in the premises." It contains no findings of fact, conclusions of law, or otherwise indicates the court's reasoning. In addition, no transcript, bystander's report, or agreed statement of facts has been provided. See Ill. S. Ct. R. 323 (eff. July 1, 2017) (providing that in lieu of a transcript, an appellant may file a bystander's report or an agreed statement of facts). The parties' briefs likewise fail to describe the proceedings below or to recount what basis the trial court gave for its decision. Consequently, we cannot discern whether an evidentiary hearing took place, whether the court considered testimony or other evidence not contained in the common law record, or what factual or legal findings the court made to reach its conclusion.

¶ 23 Thus, the parties present their opposing petitions to this court, not only as though no decision had been rendered in the trial court, but as though there were no proceedings in the trial court at all. While our review of a circuit court's decision to confirm an arbitration award is *de novo* (*Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559, ¶ 42), the *de novo* standard applies

---

when, as here, arbitration is a matter of private contract involving no state action. *Painters' District Council No. 30 v. Rock-It Interiors, Inc.*, 190 F. Supp. 3d 803, 809 (N.D. Ill. 2016).

only to the trial court's legal conclusions. *Herricane Graphics*, 354 Ill. App. 3d at 157 (noting *de novo* review was appropriate when only the court's legal conclusions were at issue on appeal from order vacating an arbitration award). The appellate court is a court of review, empowered to review errors of law or fact in the judgment or order appealed from. Ill. S. Ct. R. 366(b)(1) (eff. Feb. 1, 1994). A *de novo* standard of review means that the trial court's judgment is not entitled to deference. *People v. Avdic*, 2023 IL App (1st) 210848, ¶ 25. *De novo* review does not, however, transform the appellate court into a court of original jurisdiction. See Black's Law Dictionary 856 (7th ed. 1999) (defining original jurisdiction as "[a] court's power to hear and decide a matter before any other court can review the matter."). If the trial court made any findings of fact, its findings would be entitled to deference and only reversed if against the manifest weight of the evidence. *In re Guardianship of K.R.J.*, 405 Ill. App. 3d 527, 535 (2010).

¶ 24        In the proceedings below, the trial court necessarily had to resolve the conflict in evidence regarding notice. Since a record of the proceedings and the trial court's reasoning are absent from the record, our review of the notice issue would amount to an improper exercise of original jurisdiction. We would risk blindly substituting our judgment for the trial court's and would fail to give due deference to the court's factual findings. As noted, strict compliance with section 5's notice provision could be relaxed if the respondents were served by certified mail or received actual notice. If the trial court reasoned that notice was satisfied, it necessarily made a factual finding. Whatever the court's reasoning, we will not resolve a factual issue that the trial court was properly tasked with determining in the first instance.

¶ 25        Review of the second issue—whether Nitti and Madej were parties to the contract—is similarly hampered by a deficient record.[3] It is not clear that this is a pure question of law that can

_____

[3]Though the respondents' failed to cite a basis in the Arbitration Act to assert this argument, it could be asserted pursuant to the ground relating to the existence of an arbitration agreement. See 710 ILCS

be resolved on the record before us. The contract states that it was "made between Jason J. Nitti and Sebastian Madej members of Bratt Capital Partners, LLC or assignee ('Client') and CW PRODESIGN LLC." This wording is ambiguous. It could reasonably be read to mean that Nitti and Madej are contracting parties and the fact that they are members of Bratt Capital is included to further identify them. Likewise, it could be read to mean that only Bratt Capital is a contracting party and Nitti and Madej's names and roles as members is provided to indicate they have authority to bind Bratt Capital. Thirdly, both interpretations could be reasonably combined and mean that Nitti, Madej, and Bratt Capital are all contracting parties, jointly and severally bound to the contract.

¶ 26    Other aspects of the contract fail to resolve the ambiguity. The inclusion of Nitti's and Madej's titles with Bratt Capital next to their signatures suggests that each was signing on behalf of Bratt Capital only. Yet, Spallone—the person who signed on behalf of CW—was listed next to his title with CW, but he was not named in the recital. The respondents do not claim Spallone was an intended party to the contract and the contract does not indicate that he was. The contrast between the recital and signature portion of the contract suggests that Nitti and Madej were intended parties to the contract and signed both on behalf of Bratt Capital and themselves. The fact that both Nitti and Madej were named and signed the contract, instead of just one of them, also suggests the parties intended both to be personally bound.

¶ 27    The intepretation of a contract is a matter of law. *Gallagher v. Lenart*, 226 Ill. 2d. 208, 219 (2007). A court's primary objective is to ascertain and give effect to the parties' intentions as expressed in the agreement. *State Farm Mutual Automobile Insurance Co. v. Elmore*, 2020 IL

---

12/5(a)(5) (West 2022); see also "A court must vacate an arbitration award if the dispute is not substantively arbitrable; that is, if the parties did not agree to arbitrate." 4 Am. Jur. 2d *Alternative Dispute Resolution* § 223 (Aug. 2024 Update).

125441, ¶ 21. Ambiguity exists when a term is susceptible to more than one reasonable interpretation. *Id*. When an ambiguity exists, extrinsic evidence may be considered to interpret the contract. *Regency Commercial Associates, LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270, 275 (2007). Ambiguous terms should be interpreted against the drafter, but this is a secondary rule of intepretation, only to be invoked as a last resort after exhaustion of other interpretive guides. *Eckhardt v. The Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 31.

¶ 28        In this case, we do not know whether the circuit court found the contract ambiguous or considered extrinsic evidence to resolve the issue. If the court did consider extrinsic evidence, the parties likely disputed the facts and presented conflicting evidence, such as testimony. The court's resolution of that dispute would be a predicate factual finding toward its ultimate legal conclusion. See *Bank of Ravenswood v. Polan*, 256 Ill. App. 3d 470, 474 (1993) ("if the ambiguity can only be resolved by resort to facts in dispute, then the contract must be construed by the trier of fact."). As noted, we would owe deference to the court's factual findings. The lack of a record of the trial proceedings and the appealed order's omission of the court's reasoning prevents us from ascertaining how the court reached it decision and whether it made factual findings. Yet, since consideration of extrinsic evidence was possible, we cannot presume that the court did not make a factual finding.

¶ 29        Ultimately, the challenger has the burden to prove by clear and convincing evidence that an arbitration award was improper. *Herricane Graphics*, 354 Ill. App. 3d at 156. The appellant also bears the responsibility to see that the record is complete. *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 795 (2009). Any doubts arising from an incomplete record will be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of a record

demonstrating the existence of error, it will be presumed that the trial court acted in conformity with the law and that it had a sufficient factual basis for its rulings. *Id.*

¶ 30    Here, a deficient record compels us to presume that the trial court had a sufficient factual basis and properly found that the respondents received notice of the arbitration hearing and that Nitti and Madej were parties to the contract. Accordingly, we must affirm the judgment confirming the arbitration award.

¶ 31                                    III. CONCLUSION

¶ 32    Based on the foregoing, we affirm the judgment of the circuit court.

¶ 33    Affirmed.

¶ 34    Motion to disqualify and strike appellee's brief is denied.

¶ 35    Motion to strike affidavit is denied as moot.